728 A.2d 776

Stephen T. FOX

v.

**COMPTROLLER OF THE TREASURY.**

**No. 1090, Sept. Term, 1998.**

Court of Special Appeals of Maryland.

April 29, 1999.

Stuart Levine, Baltimore, for appellant.

Renee Nacrelli, Asst. Attorney General (J. Joseph Curran, Jr., Attorney General, and Deborah B. Bacharach, Asst. Attorney General, on the brief), Baltimore, for appellee.

Argued before MOYLAN, THIEME and BYRNES, JJ.

THIEME, Judge.

This is an appeal from the decision of the Circuit Court for Baltimore City affirming the Maryland Tax Court's determination that Stephen T. Fox (Fox) is liable, as an officer of The Baby Shop, Inc., t/a Crib N' Cradle (the Corporation), for $58,510.23 in unremitted sales and use taxes that were collected by the Corporation, plus penalties and interest. The Comptroller of the Treasury (the Comptroller) levied assessments, which the Comptroller's hearing officer affirmed. Fox appealed to the Maryland Tax Court, which affirmed the assessments. The Circuit Court for Baltimore City affirmed the decision of the tax court. Fox then appealed to this Court.

### Question Presented

Did the Maryland Tax Court, and the circuit court on judicial review, correctly decide under § 11–601(d)(1)(i) of the Tax–General Article, which holds certain specified officers of a corporation, including a vice president, personally liable for a corporation's unpaid sales tax, that Stephen T. Fox is liable, as vice president of The Baby Shop, Inc., for payment of the sales and use taxes collected but not remitted to the Comptroller?

We answer "yes."

### Statement of Facts

Before incorporating The Baby Shop, Inc., Fox worked for Crib N' Cradle, Inc., a Virginia corporation, in its Baltimore

stores. Upon discovering that Crib N' Cradle might close its stores, Fox and Joseph Crigger, an area district manager for Crib N' Cradle, decided to buy the Baltimore area stores.

In the spring of 1990, Fox, together with Crigger, Crigger's wife, and his mother-in-law, formed the Corporation to acquire and operate three (3) stores, trading under the name "Crib N' Cradle," which would sell infant and child furniture and related products. The board of directors of the Corporation held an initial meeting of directors on March 1, 1990. The following officers were elected:

| | |
|---|---|
| Joseph Crigger: | president |
| Rheta Crigger: | secretary |
| Rheta Ambrose (Mrs. Crigger's mother): | treasurer |
| Stephen T. Fox: | vice president |

The Criggers and Ms. Ambrose collectively owned sixty-six percent (66%) of the capital stock of the Corporation. Fox and his girlfriend, Mary Wilson, each owned seventeen percent (17%). The Corporation's by-laws provided only that the vice president should act for the president in the event that the president is unable to perform his duties and that the vice president should have the duties that "from time to time may be assigned to him by the president and the board of directors." According to the Stock Purchase Agreement, the shares of Fox and his girlfriend were treated "as if Stephen T. Fox and Mary Wilson were the joint title holders of the shares held by each." The Corporation proceeded to open several other stores.[1]

In addition to being a stockholder, director, and vice president of the Corporation, Fox was also the store manager for the Corporation's Towson branch store, which was the largest and served as the warehouse for merchandise for the other stores. He also filled in occasionally at other store locations.

---

1. They opened stores in Waldorf (1991), the Columbia Mall (1991), the Harundale Mall (1992), and a second store in Severna Park (1991). All of the stores, except the second Severna Park store, were engaged in the same line of business as the original three stores. The second Severna Park store was engaged in selling party supplies and costumes.

Fox was involved in the financial affairs of the corporation from its beginning. Fox was apprised of all the financial aspects of the purchase of the stores, and was provided with financial statements, cash flow projections, and all settlement statements, including inventories. Fox was jointly and severally liable on the initial promissory note for $786,761.00 for the bulk of the purchase from Crib N' Cradle, Inc. Fox personally guaranteed the lease for the Corporation's Towson store and was personally obligated on a promissory note for $16,312.47 to the lessor of the Corporation's Severna Park store.

Fox collected the sales receipts and sales tax receipts made at the Towson store on a daily basis. The taxes were broken out and put in a bank account in the evening. All deposit slips were taken on a daily basis to the central office located in Severna Park, which was operated by the Criggers. From that point on, Fox had no knowledge of the sales tax. He never filled out or prepared a sales tax report. Fox was not certain how sales taxes were to be paid. Fox's handling of funds for the Corporation was limited to two classes of activity: (1) depositing the receipts in the bank branch most convenient to the Towson store, and (2) signing checks for freight and C.O.D. charges. Fox did not have any knowledge of what happened to the receipts he deposited in the Corporation's account, other than the checks he drew for freight and C.O.D. charges. The Criggers never consulted him about sales taxes or other bills. Except for the lease for the Towson store, Fox never reviewed a lease for any of the premises leased by the Corporation. He never prepared, executed, or reviewed corporate tax returns prior to their filing.

Fox was, however, authorized to sign checks on the three corporate bank accounts, without any co-signature. Fox signed checks on these accounts, including the account into which he deposited the Towson store receipts.

In February of 1994, Fox learned for the first time from Joseph Crigger that the Corporation was delinquent in its payment of sales taxes. Fox assumed that this meant that only one month was delinquent. Fox had similar discussions

in March of 1994. The next discussion that he had with any of the Criggers concerning the sales tax issue occurred in May of 1994. It was only then that Fox learned the degree of the delinquency. The Corporation ceased operations shortly thereafter, in the second week of June 1994, when the last of its locations, the Towson store, closed.

On April 25, 1995, the Comptroller issued a Notice of Final Determination for unpaid sales taxes due from the Corporation against Fox as an officer of the Corporation [2] in four (4) separate cases. The total assessment of sales tax, penalties, and interest was $72,332.49.

### Discussion

### § 11–601(d) of the Tax–General Article

The Comptroller assessed against Fox the unpaid sales taxes due from the Corporation pursuant to Md.Code (1988, 1997 Repl. Vol., 1998 Supp.) § 11–601 of the Tax–General (Tax–Gen.) Article. That section provides, in pertinent part, as follows:

If a buyer or vendor liable for the sales and use tax and for the interest and penalties of the tax under subsection (c) of this section is a corporation ..., personal liability for the sales and use tax and for the interest and penalties of the tax extends to:

(1) in the case of a corporation:

(i) the president, vice president or treasurer of the corporation; and

(ii) any officer of the corporation who directly or indirectly owns more than 20% of the stock of the corporation.

Id. § 11–601(d)(1).

█ The circuit court correctly held that Fox, who was the vice president of The Baby Shop, Inc., was liable for the

---

2. The record is not clear as to why Fox was selected by the Comptroller.

Corporation's unpaid sales and use taxes that were collected but not remitted pursuant to Tax–Gen. § 11–601(d).

 As is often stated, the primary goal in a case requiring statutory construction is to ascertain and effectuate the intent of the General Assembly. *See Comptroller of the Treasury Income Tax Div. v. American Satellite Corp.,* 312 Md. 537, 544, 540 A.2d 1146 (1988); *Dean v. Pinder,* 312 Md. 154, 161, 538 A.2d 1184 (1988); *Kaczorowski v. Mayor & City Council of Baltimore,* 309 Md. 505, 512–13, 525 A.2d 628 (1987); *Comptroller of the Treasury v. Fairchild Indus., Inc.,* 303 Md. 280, 284, 493 A.2d 341 (1985). In fulfilling this function, the reviewing court considers the language of the enactment itself in its natural and ordinary signification. When a statute is susceptible of more than one meaning, the court may consider the consequences resulting from one meaning, rather than another, and adopt the construction that promotes the most reasonable result in light of the objectives and purpose of the enactment. *See Tucker v. Fireman's Fund Ins. Co.,* 308 Md. 69, 75, 517 A.2d 730 (1986). Moreover, the legislative intent—more accurately described as legislative goal or purpose—is to be divined by considering the language of the statute in the context within which it was adopted. *Kaczorowski,* 309 Md. at 514, 525 A.2d 628.

The predecessors of § 11–601(d) were Art. 81 §§ 331(a) and 383, which provided, in pertinent part, as follows:

When any corporate vendee fails to pay the tax as provided in this section, then in addition to the liability of such corporate vendee, the officers, or any of them, of such corporation shall be personally liable for such tax.

Md.Code (1957, 1980 Repl.Vol.), Art. 81 § 331(a)(repealed 1988).

If any corporation fails to pay the tax as hereby required, then in addition to the liability of the corporation, any officer of the corporation shall be personally liable for the tax.

*Id.* § 383 (repealed 1988). These prior provisions imposed liability for unpaid taxes upon all corporate officers. In

*Rucker v. Comptroller of the Treasury,* 315 Md. 559, 555 A.2d 1060 (1989), in scrutinizing Art. 81 §§ 331(a) and 383, the Court of Appeals stated:

> Rucker argues that since this legislation does not pinpoint certain officers as being responsible for payment of taxes, the tax court should look to see who in the corporation actually is assigned the responsibility of payment of taxes. However, we find no merit in this argument. . . .
>
> As we see it, Rucker's argument is specious. When he consented to and accepted election to one of the statutorily designated offices, he simultaneously became responsible for the payment of the corporation's sales and use taxes. Accordingly, the Comptroller properly assessed Rucker for the full amount of the delinquent taxes.

*Id.* at 566, 555 A.2d 1060.

Even before *Rucker* was decided §§ 331(a) and 383 were recodified, in pertinent part, in what is now Tax–Gen. § 11–601(d)(1), which restricted liability only to individuals who either hold the offices of president, vice president, or treasurer, or are officers who "directly or indirectly" own more than twenty percent (20%) of the stock of the corporation.

The statutory language of § 11–601(d)(1) is unambiguous; it clearly imposes liability on certain specified officers without regard to their ability to control the fiscal management of the corporation. In the instant case, it is undisputed that Fox was the vice president of The Baby Shop, Inc.

The history of § 11–601(d) demonstrates the intent of the legislature to impose liability on the specified officers without regard to their fiscal management. The General Assembly enacted the current version of § 11–601 by the passage of Senate Bill 642 in its 1992 session. The pertinent part of Senate Bill 642 reads as follows:

> (3) IF THE BUYER OR VENDOR LIABLE UNDER ITEM (1) OR (2) OF THIS SUBSECTION IS A CORPORATION:
>
> (I) THE PRESIDENT, <u>VICE PRESIDENT, OR TREASURER</u> OF THE CORPORATION; <u>AND</u>

(II) ANY OFFICER OF THE CORPORATION WHO

~~1.~~ DIRECTLY OR INDIRECTLY OWNS ~~A MAJORI-TY~~ MORE THAN 20% OF THE STOCK OF THE CORPORATION, ~~:OR~~

~~2. EXERCISES DIRECT CONTROL OVER ITS FIS-CAL MANAGEMENT; AND~~

~~(III) ANY AGENT OF THE CORPORATION WHO HAS TO COLLECT OR PAY THE SALES AND USE TAX.~~

S. 642 § 1, 1992 Md. Laws 3176, 3176–77.[3]

As originally proposed, Senate Bill 642 would have limited the personal liability of officers to the president, an officer owning a majority of the stock, or any officer who "exercises direct control over fiscal management." However, all reference to an officer's control over fiscal management was deleted from Senate Bill 642 as it was finally enacted. Thus, we may conclude that the legislature intentionally imposed personal liability on specific officers, whether or not they managed the corporation's money or paid the taxes.

By imposing liability for taxes on a corporation's president, vice president and treasurer, the legislature has given these officers due notice of their duty to see that the State's taxes are paid. By law, those who accept these corporate offices become "simultaneously responsible for the payment of the corporation's sales and use taxes." *Rucker*, 315 Md. at 566, 555 A.2d 1060. The officers thus have an inescapable statutory duty to comply with the tax law.

When the legislature intended that liability be imposed only on officers with direct control over a corporation's fiscal management, it has expressly said so. For example, the Tax–General Article's income tax withholding provisions provide:

---

**3.** Capital letters indicate matter added to the existing law. <u>Underlining</u> indicates amendments to the bill and ~~strike-out~~ indicates matter stricken by amendment.

If an employer or payor negligently fails to withhold or to pay income tax in accordance with subsection (a) of this section, personal liability for that income tax extends:

(1) to the employer or payor;

(2) if the employer or payor is a corporation, to:

(i) *any officer of the corporation who exercises direct control over its fiscal management* . . . .

Tax–Gen. § 10–906(d)(1)–(2)(i) (emphasis added).

The appellant argues that the Court of Appeals in *Rucker* attempted to justify the appropriateness of the imposition of liability upon an entire class of individuals by stating:

As we see it, there is nothing arbitrary about holding persons liable for taxes *who hold themselves out as responsible for corporate conduct and management.* Here not only was Rucker responsible under the design and intent of the statute, but also by his actual conduct since he paid the same kind of taxes for this corporation in the past.

*Rucker,* 315 Md. at 567, 555 A.2d 1060 (emphasis added). The appellant posits that Rucker, as president and treasurer of the corporation, had de jure control over the collection and remittance of sales taxes. In the present case, however, the appellant had no de jure authority since neither the Maryland General Corporations Law nor any of the governing documents of the Corporation contained such a grant of power.

Although the office of vice president is not statutorily required,[4] the corporate charter of the Corporation created this corporate office and the appellant was its incumbent. The facts that the by-laws of the Corporation provided only that the vice president was to substitute for the president if the president was unable to discharge his duties, and gave the vice president only such duties as were "from time to time to be assigned to him," can not take precedence over Tax–Gen.

---

**4.** *See* Md.Code (1975, 1993 Repl.Vol.) § 2–412(a) of the Corporations and Associations Article (Maroon Volume) (stating that the only required officers for a Maryland corporation are a president, a treasurer, and a secretary).

§ 11–601(d). There is nothing in evidence here to suggest that Fox was in any way prohibited from paying over the sales and use taxes. The fact that someone else paid the taxes does not establish that Fox could not have paid them. While it is true that the Corporation's by-laws did not specifically assign responsibility for paying taxes to Fox, it is also true that the by-laws do not specifically assign responsibility for paying taxes to any officer. Fox collected sales receipts and state taxes from customers and deposited those taxes into accounts on which he had authority to sign checks. Fox thus had responsibility for corporate funds, and his check-signing authorizations contain no limitation on the purpose for which he was allowed to write checks.

Certainly, a corporation's failure, in its bylaws, to designate an officer who will be responsible for the payment of taxes cannot defeat the statutory liability of officers for taxes, or render the statute unconstitutional. Neither can statutory imposition of liability be rendered a nullity, or unconstitutional, by an officer's intentional or negligent avoidance of any practical responsibility for filing returns or signing checks for tax payments. Indeed, if Fox is correct, a corporation could merely assign the responsibility for paying taxes to someone other than an officer, and the statute imposing liability on the officers would thus be a nullity, as well as unconstitutional. That result would be an absurdity.

Although Fox's liability under Tax–Gen. § 11–601(d)(1)(i) does not turn on the degree of control he exercised over the fiscal management of the corporation, he nevertheless possessed considerable corporate fiscal powers. He was authorized to sign checks on the three corporate bank accounts, without any co-signatory, and, in fact, did sign checks on these accounts. Fox also managed the Towson store and was responsible for collecting the receipts on sales, including sales and use taxes, and for depositing the receipts in one of the corporation's bank accounts. In addition, he guaranteed or assumed personal liability for corporate debt. Thus, even if such fiscal control were required by the statute, which it

clearly is not, Fox would be liable for the Corporation's unpaid sales taxes.

### Due Process Challenge

The appellant argues that § 11–601(d)(1)(i) imposes a penalty upon certain individuals who are corporate officers when the corporation fails to pay the collected sales tax. According to the appellant, the due process defect exhibited in § 11–601(d)(1)(i) is that it creates an irrebuttable presumption that the specified officers have authority to effect tax compliance. Indeed, the appellant continues, the Court of Appeals in *Rucker* went to great lengths to show that Rucker actually had the requisite power and authority to act. However, the wide net cast by the statute creates an irrebuttable presumption of responsibility even where, as here, the individual who is held responsible for the unpaid tax could not possibly have discharged that obligation.

■ What the appellant is stating quite simply is that officers of a corporation have the duty and responsibility to collect and remit the tax and may be personally liable therefor. However, because the statute may be applied so as to attach liability to an officer who has no possible responsibility in relation to the tax, the statute is unconstitutional. This is simply a revisiting of Rucker's position that former Art. 81 §§ 331(a) and 383 unconstitutionally violated his substantive due process rights because they potentially imposed liability "on officers who had no responsibility for the collection and payment of taxes," an argument that the Court found to be "totally without merit." *Rucker,* 315 Md. at 566–67, 555 A.2d 1060.

■ Additionally, the appellant's position is contrary to well-established principles of statutory construction. Tax–Gen. § 11–601 is presumed to be constitutional. *See Cider Barrel Mobile Home Court v. Eader,* 287 Md. 571, 579, 414 A.2d 1246 (1980); *Roberts v. Total Health Care, Inc.,* 109 Md.App. 635, 643, 675 A.2d 995 (1996), *aff'd,* 349 Md. 499, 709 A.2d 142 (1998). And, more important, it has been held, by

implication, to be constitutional because the Court of Appeals found in *Rucker* that there was a rational basis for imposed liability for unpaid sales tax on any corporate officer under Art. 81 §§ 331(a) and 383, a broader version of § 11–601(d). *Rucker*, 315 Md. at 567, 555 A.2d 1060.

Due process analysis begins with the Fourteenth Amendment of the U.S. Constitution, which provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. Amend. XIV, § 1. The Maryland Declaration of Rights uses similar language to secure due process rights. Md. Const. Declaration of Rights art. 24.[5] The substantive guarantee of due process requires that the legislation have a rational relationship to a legitimate governmental end. "One who attacks a statute on due process grounds bears the burden of proving the absence of such a basis, *viz.*, that it does not bear a real and substantial relationship to the government object sought to be attained." *Comprehensive Accounting Serv. Co. v. Maryland State Bd. of Pub. Accountancy*, 284 Md. 474, 483–84, 397 A.2d 1019 (1979). A highly deferential and relatively lax rational relationship test was announced in *Madden v. Kentucky*, 309 U.S. 83, 60 S.Ct. 406, 84 L.Ed. 590 (1940):

[I]n taxation, even more than in other fields, legislatures possess the greatest freedom in classification. Since the members of a legislature necessarily enjoy a familiarity with local conditions which this Court cannot have, the presumption of constitutionality can be overcome only by the most explicit demonstration that a classification is a hostile and oppressive discrimination against particular persons and classes. The burden is on the one attacking the legislative

---

**5.** Article 24 of the Maryland Declaration of Rights and the Fourteenth Amendment of the U.S. Constitution have the same meaning, and thus U.S. Supreme Court interpretations of the Fourteenth Amendment function as authority for interpretation of Article 24. *See Pitsenberger v. Pitsenberger*, 287 Md. 20, 27, 410 A.2d 1052 (1980). The reference in the appellant's brief to the Fourth Amendment to the U.S. Constitution, which establishes the right to security from unreasonable search and seizure, seems inappropriate, and was no doubt a misreference to the Fifth Amendment to the federal constitution.

arrangement to negative every conceivable basis which might support it.

*Id.* at 88, 60 S.Ct. 406 (footnotes omitted). Thus, one attacking a tax statute, such as that at issue here, bears an especially difficult burden.

In dismissing Rucker's argument, the Court of Appeals applied the proper tests for constitutionality, citing to established law that "the guarantee of substantive due process is satisfied if the statute has a rational basis," and that the one attacking a statute "bears the burden of proving the absence of such rational basis." *Rucker*, 315 Md. at 567, 555 A.2d 1060. The Court recognized that Maryland law requires a corporation to name certain officers, and that such officers "are frequently vested with extensive power and authority to manage the day-to-day business concerns of the corporation." *Id.* at 566, 555 A.2d 1060. The Court then recognized that the government object sought to be obtained—"the collection of taxes due and owing which might otherwise go unpaid"—was a rational basis for imposing liability for taxes on the persons "who hold themselves out as responsible for corporate conduct and management." *Id.* at 567, 555 A.2d 1060. The government's legitimate interest in insuring its receipt of public revenues is clearly served by, and is thus rationally related to, the imposition of liability on those persons who ordinarily run a corporation—its officers. The rational basis found by the Court of Appeals for the broad imposition of personal liability on "any officer" under former Art. 81 §§ 331(a) and 383 certainly suffices as a rational basis for the narrower imposition of liability on specifically named corporate officers—the president, vice president, or treasurer—under Tax–Gen. § 11–601(d).

Moreover, nothing in *Rucker* suggests that the imposition of liability would be unconstitutional even if *Rucker* had had no explicit authority to pay the taxes. Indeed, the Court of Appeals found Rucker to be "responsible under the design and intent of the statute," which imposes liability without regard to any responsibility for the collection or payment of taxes. *Rucker*, 315 Md. at 567, 555 A.2d 1060. The Court refers to

the fact that Rucker was "also" responsible by his actual conduct, but that is not the basis for the Court's holding that there was no violation of his due process rights. *Id.* at 567, 555 A.2d 1060. The rational basis for holding corporate officers liable for taxes extends to all officers, not just the officer who signs the checks.

*Rucker* clearly teaches that, where the State seeks to raise revenue through its taxing power, reviewing courts have no right to determine the propriety or wisdom of the classifications drawn, but may only consider if any rational basis can be found to support them.

### *Limited Purview of the Court of Special Appeals*

Refining his due process argument, the appellant claims a further constitutional problem with the statute. He argues that *Rucker* was wrongly decided because the predecessor statutes to § 11–601(d) created an impermissible irrebuttable presumption that corporate officers are strictly liable for unpaid taxes, regardless of their knowledge of the deficiency or their ability to cause the corporation to pay the taxes. The claimed "constitutional infirmity" exhibited by the statute and by the due process analysis of *Rucker* is based on the appellant's reading of three due process-statutory interpretation cases: *Mahoney v. Byers,* 187 Md. 81, 48 A.2d 600 (1946), *Maryland Racing Commission v. McGee,* 212 Md. 69, 128 A.2d 419 (1957), and *Goldman v. Maryland Racing Commission,* 85 Md.App. 544, 584 A.2d 709 (1991).

We shall not respond to this argument by appellant, as its answer would require us to venture beyond our purview. In response to another appellant's request that this Court "overturn 125 years of law in this State concerning easements . . .," we replied:

> Likewise, we shall not respond to question 1, as it is an inappropriate question. Our function is to address the actions of the trial court in order to determine whether it erred. Should we err, the question can be presented to higher authority.

*Beck v. Mangels,* 100 Md.App. 144, 149, 640 A.2d 236 (1994). We assume that the *Rucker* Court was well aware of its own decisions in *Mahoney* and *McGee.*

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANT.**