754 A.2d 1120

**UNINSURED EMPLOYERS' FUND, et al.**

v.

**Kevin E. PENNEL.**

No. 1788, Sept. Term, 1999.

Court of Special Appeals of Maryland.

July 5, 2000.

---

280

282

Esther Goldring, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Towson, for appellant, Uninsured Employers' Fund.

Robert E. Rockwell (Semmes, Bowen & Semmes, on the brief), Hagerstown, for appellant, Greise.

John J. Coyle, Jr. (Hidey, Coyle & Monteleone, on the brief), Cumberland, for appellee.

Argued before MOYLAN, DAVIS and THIEME, JJ.

THIEME, Judge.

Appellants appeal from a judgment of the Circuit Court for Allegany County affirming the decision of the Workers' Compensation Commission ("the Commission") in favor of appellee. The appellants in this case are the employers, Robert F. Greise and Betty F. Greise (collectively referred to in this opinion as "Greise"), and the Uninsured Employers' Fund ("the Fund").[1] Appellee is the employee, Kevin Pennel. Appellants present for our review the following questions, which we have reordered in the interest of efficiency.

1. Did the Circuit Court err in finding that the value of breakfast prepared by the farmer's wife must be considered in calculating "payroll" for the purpose of determining whether the farm worker is a covered employee under Maryland Workers' Compensation Law, Maryland Labor and Employment Annotated Code, § 9–210(b)(2)(ii)?

2. Did the Circuit Court err in affirming the decision of the Workers' Compensation Commission because it applied an incorrect standard of review?

3. Did the Circuit Court err in affirming the decision of the Workers' Compensation Commission based on a motion for summary judgment when the Claimant gave varying statements under oath as to his belief regarding whether he considered breakfast as part of his compensation or as an entitlement in connection with his employment?

---

1. The Fund and Greise are collectively referred to as "appellants."

We hold that the court properly found that the breakfasts prepared for appellee constituted "payroll" under the Workers' Compensation Act and that the court applied the correct standard of review in arriving at its decision. We further find that the court did not err in affirming the Commission's order on the basis of a summary judgment motion.

In his brief to this Court, appellee cross-appeals and presents the following question:

Did the Circuit Court err in granting the motion of Greise to be joined as a party plaintiff?

We answer "no" to this question and affirm the judgment of the circuit court.

### Facts

Robert and Betty Greise, husband and wife, operated a 205 acre dairy farm called the Greise Dairy Farm ("the Farm") in Cumberland, Maryland. Kevin Pennel was the sole employee on the farm. Pennel's gross pay was $279.89 per week. After various tax deductions, he received $236.00 by check or in cash for every week that he worked. During his vacation week, he received $150.00, either by check or in cash, instead of his regular pay. For the year before August 14, 1997, the date Pennel was injured, his weekly payments by check and in cash totaled $14,424.39.

Pennel worked at the farm for sixteen years. For twelve years, he worked seven days per week, fourteen hours per day, except Sundays, when he worked six hours. Pennel was off one week per year during deer hunting season. Mrs. Greise prepared breakfast for Pennel consisting of eggs, bacon or sausage, and milk every morning except Fridays when she had her hair appointments. By written stipulation, the parties agreed that for the year before August 14, 1997, the meals provided to Pennel had a value of $918.00. Therefore, the stipulated value of the meals added to the weekly cash and check payments totaled $15,342.39.

On August 14, 1997, Pennel sustained a work-related injury to his right eye. On September 2, 1997, he filed a claim with

the Workers' Compensation Commission, alleging that he was working as a dairy farmer on the Farm on the date of his injury. The Commission held a hearing on July 27, 1998. Pennel claimed that, as a result of the injury, he was temporarily and totally disabled from August 14, 1997, through April 28, 1998. The parties did not dispute the nature and cause of the injury, the reasonableness and necessity of the related medical treatment, or the claimed lost time from work. Rather, the sole issue in dispute was whether the breakfasts prepared by Mrs. Greise were included in the meaning of the word "payroll" as used in the Workers' Compensation Act ("the Act"). If the meals were part of the Greise "payroll," then Pennel was a "covered employee" under the Act and was eligible to receive compensation for his injury. The Commission found that Pennel was a covered employee and entered an award of compensation on August 4, 1998.

Mr. and Mrs. Greise appealed the Commission's decision to the Circuit Court for Allegany County. Pennel and the Fund noted their intent to participate in the appeal. The parties stipulated as to the facts and agreed that Greise and the Fund would seek a legal interpretation of the term "payroll" by filing a motion for summary judgment solely as to that issue. The court denied the motion and affirmed the decision of the Commission.

The Fund filed a timely appeal to this Court; Greise did not. After the time for appeal expired, Greise filed a motion to join the appeal as a party plaintiff. The court granted the motion and denied Pennel's request for reconsideration. Pennel's cross-appeal concerns the order joining Greise as a party plaintiff.

### Discussion

### Standard of Review

In reviewing administrative agency decisions, this Court's function is "precisely the same as that of the circuit court." *Department of Health & Mental Hygiene v. Shrieves*, 100 Md.App. 283, 303–04, 641 A.2d 899 (1994). Like the

circuit court, we "must determine whether the agency's decision is 'in accordance with the law or whether it is arbitrary, illegal, and capricious.'" *Curry v. Department of Public Safety and Correctional Services,* 102 Md.App. 620, 626–27, 651 A.2d 390 (1994), *cert. dismissed as improvidently granted,* 340 Md. 175, 665 A.2d 1038 (1995) (quoting *Moseman v. County Council,* 99 Md.App. 258, 262, 636 A.2d 499, *cert. denied,* 335 Md. 229, 643 A.2d 383 (1994)). When the agency's factual findings are supported by substantial evidence in the record and the decision is legally correct, we must affirm the agency's decision. *See, e.g., Carriage Hill v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 183, 212, 724 A.2d 745 (1999) (and cases cited therein). As this Court recognized in *Department of Health and Mental Hygiene v. Riverview Nursing Centre, Inc.,* "[t]o the extent the issues on appeal turn on the correctness of an agency's findings of fact, such findings must be reviewed under the substantial evidence test." 104 Md.App. 593, 602, 657 A.2d 372, *cert. denied,* 340 Md. 215, 665 A.2d 1058 (1995). Our task is to determine "whether there was substantial evidence before the administrative agency on the record as a whole to support its conclusions," without substituting our judgment for that of the agency. *Maryland Commission on Human Relations v. Mayor and City Council of Baltimore,* 86 Md.App. 167, 173, 586 A.2d 37, *cert. denied,* 323 Md. 309, 593 A.2d 668 (1991). When an agency's interpretation of a statute or regulation is at issue, however, the substituted judgment standard applies and we will substitute our judgment for that of the agency. *See Carriage Hill,* 125 Md.App. at 212, 724 A.2d 745; *see also Curry,* 102 Md.App. at 627, 651 A.2d 390 ("When reviewing issues of law ... the court's review is expansive and it may substitute its judgment for that of the agency.").

■ In particular, when reviewing a decision by the Workers' Compensation Commission, "the standard to be employed by the circuit court, as well as the appellate court, is limited to determining whether the Commission exceeded the powers granted to it by [the Maryland Code], and whether it misconstrued the law and facts applicable to the case decided."

*Workers' Compensation Comm'n v. May,* 88 Md.App. 408, 416, 594 A.2d 1232 (1991) (and cases cited therein). Section 9-745 of the Labor and Employment Article, Maryland Code, provides the following regarding appellate proceedings:

(b) *Presumption and burden of proof.*—In each court proceeding under this title:

(1) the decision of the Commission is presumed to be prima facie correct; and

(2) the party challenging the decision has the burden of proof.

(c) *Determination by court.*—The court shall determine whether the Commission:

(1) justly considered all of the facts about the accidental personal injury, occupational disease, or compensable hernia;

(2) exceeded the powers granted to it under this title; or

(3) misconstrued the law and facts applicable in the case decided.

\* \* \*

(e) *Disposition.*—(1) If the court determines that the Commission acted within its powers and correctly construed the law and facts, the court shall confirm the decision of the Commission.

(2) If the court determines that the Commission did not act within its powers or did not correctly construe the law and facts, the court shall reverse or modify the decision or remand the case to the Commission for further proceedings.

Md.Code (1991, 1999 Repl.Vol.), § 9-745 of the Labor and Employment Article.

 In the case *sub judice,* the parties stipulated that there were no material facts in dispute and that the issue before the court, whether meals are included in the term "payroll," was purely a legal question. Therefore, in this appeal, we substitute our judgment for that of the Workers' Compensation

Commission to determine whether it misconstrued the law as it applies to the facts of this case.

*Definition of "Payroll" in § 9–210*

The sole question before the trial court, and indeed the sole question properly before this Court, is how to interpret the word "payroll" as it is used in § 9–210 of the Workers' Compensation Act, Maryland Code (1991, 1999 Repl.Vol.), Title 9 of the Labor and Employment Article. In pertinent part, the Act provides as follows:

(b) *Employee covered.*—Except as provided in subsection (c) of this section, an individual, including a migrant farm worker, is a covered employee if:

(1) the individual receives compensation from a farmer for any service other than office work, including:

(i) operating a machine connected with animal, crop, or soil management;

(ii) constructing or repairing a fixture or machine; or

(iii) handling an animal or crop with or without a machine; and

(2) the farmer has:

(i) at least 3 full-time employees; or

(ii) an annual payroll of at least $15,000 for full-time employees.

Md.Code (1991, 1999 Repl.Vol.), § 9–210 of the Labor and Employment Article.

In this case, Pennel's annual salary, paid by check and in cash, totaled $14,424.39. At that salary, as the sole employee, Pennel would not be considered a "covered employee" under the Act, as § 9–210(b)(2)(ii) specifies that the annual payroll must be at least $15,000.00. If, however, the meals prepared by Mrs. Greise are included in the payroll calculation, Pennel's salary "increases" to $15,342.39, which makes him eligible for workers' compensation under the Act. Therefore, to determine whether Pennel may recover, we must determine whether the

term "payroll," as it is used in the Act, includes the value of meals. We hold that it does.

■ As the Court of Appeals recently stated in *Sacchet v. Blan,* 353 Md. 87, 92, 724 A.2d 667 (1999), "the cardinal rule of statutory construction is to ascertain and give effect to the true legislative intent that lies behind the statutory enactment, itself." *See also Catonsville Nursing v. Loveman,* 349 Md. 560, 570, 709 A.2d 749 (1998); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471 (1988). To determine the legislative intent, we primarily look to "the plain language of the statute, with the words given their ordinary and natural meanings." *Sacchet,* 353 Md. at 92, 724 A.2d 667; *see also Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347 (1995).

In this case, we are concerned with the meaning of the term "payroll." Because "payroll" is not defined in the Act, we must examine the "ordinary and natural meaning" of the term. The *American Heritage Dictionary* 912 (2d ed.1982) defines "payroll" as: "1. A list of employees receiving wages, with the amounts due to each. 2. The total sum of money to be paid out to employees at a given time." Similarly, *Miriam Webster's Collegiate Dictionary* 854 (10 th ed.1997) provides that payroll is: "1: a paymaster's or employer's list of those entitled to pay and of the amounts due to each; 2: the sum necessary for distribution to those on a payroll; *also:* the money to be distributed." Finally, *Black's Law Dictionary* 1151 (6 th ed.1990) defines "payroll" as: "1. A list of employees to be paid and the amount due to each of them. 2. The total compensation payable to a company's employees for one pay period." None of these definitions explicitly limits the term "payroll" to include only the monetary payments due to employees.[2] Indeed, each definition leaves room for the possibility that "payroll" also includes other forms of compensation or,

---

2. As appellee notes in his brief to this Court, these definitions fail to provide guidance as to what constitutes "pay," an "amount due," or "compensation." The definitions of each of these words in the dictionaries we have referenced are broad enough to include forms of payment beyond money.

at least, the monetary value of that compensation. Therefore, more than one meaning could attach to the term "payroll," and our task is to "ascertain the legislative intention and place that intent into effect." *Subsequent Injury Fund v. Chapman*, 11 Md.App. 369, 375, 274 A.2d 870, *aff'd*, 262 Md. 367, 277 A.2d 444 (1971).

When the words in a statute could be given more than one meaning, "the court may consider the consequences resulting from one meaning, rather than another, and adopt the construction that promotes the most reasonable result in light of the objectives and purpose of the enactment." *Fox v. Comptroller of the Treasury*, 126 Md.App. 279, 285, 728 A.2d 776, *cert. denied*, 355 Md. 612, 735 A.2d 1106 (1999) (citing *Tucker v. Fireman's Fund Ins. Co.*, 308 Md. 69, 75, 517 A.2d 730 (1986)). As we noted in *Chapman*, "we are mindful of the rule that where there is ambiguity in the compensation law the uncertainty should be resolved in favor of the claimant." *Chapman*, 11 Md.App. at 376, 274 A.2d 870 (citing *Barnes v. Ezrine Tire Co.*, 249 Md. 557, 561, 241 A.2d 392 (1968)). Indeed, the "primary purpose of the [Workers' Compensation] Act ... is to protect workers and their families from hardships inflicted by work-related injuries." *Ametek v. O'Connor*, 126 Md.App. 109, 116, 727 A.2d 437, *cert. granted*, 355 Md. 610, 735 A.2d 1105 (1999). As the Court of Appeals stated in *Philip Electronics v. Wright*, "The Maryland Workers Compensation Act was originally enacted in 1914 to compensate employees for the loss of earning capacity resulting from accidental injury, disease, or death occurring during the course of employment." 348 Md. 209, 215–16, 703 A.2d 150 (1997). The Act is "remedial in nature" and should therefore " 'be construed as liberally in favor of injured employees as its provisions will permit in order to effectuate its benevolent purposes.' " *Wright*, 348 Md. at 216, 703 A.2d 150 (quoting *Para v. Richards Group*, 339 Md. 241, 251, 661 A.2d 737 (1995)); *see also Lovellette v. City of Baltimore*, 297 Md. 271, 282, 465 A.2d 1141 (1983); *Tortuga v. Wolfensberger*, 97 Md.App. 79, 84, 627 A.2d 56, *cert. denied*, 332 Md. 703, 632 A.2d 1209 (1993). Therefore, "in interpreting the Act, we do

not apply the canon of construction that a statute in derogation of the common law should be strictly construed." *Wright,* 348 Md. at 216, 703 A.2d 150.

 In addition, "all sections of the Act must be read together, in conjunction with one another, to discern the true intent of the legislature." *Wright,* 348 Md. at 216, 703 A.2d 150; *see also Vest v. Giant Food Stores, Inc.,* 329 Md. 461, 466–67, 620 A.2d 340 (1993); *Ryder Truck Lines v. Kennedy,* 296 Md. 528, 537, 463 A.2d 850 (1983).

Statutes which relate to the same thing or general subject matter, and which are not inconsistent with each other are *in pari materia,* and should be construed together so that they will harmonize with each other and be consistent with their general object and scope, even though they were passed at different times and contain no reference to each other. Consistent with this established rule of statutory construction, we think all Sections of the Workmen's Compensation Law (Article 101) must be read and considered together in arriving at the true intent of the Legislature, as they form part of a general system; indeed, the rule has been applied by the Court of Appeals in interpreting the Motor Vehicle Code (Article 66½), . . . the Retail Sales Tax Act (Article 81), . . . the Defective Delinquent Law (Article 31B), . . . and the Alcohol Beverages Code (Article 2B). . . .

*Chapman,* 11 Md.App. at 375, 274 A.2d 870 (citations omitted).

With these considerations in mind, we examine § 9–602(a) of the Act, which addresses the method for computing an employee's average weekly wage. In pertinent part, the statute provides as follows:

(a) *Computation—In general.*—(1) Except as otherwise provided in this section, the average weekly wage of a covered employee shall be computed by determining the average of the weekly wages of the covered employee:

(i) when the covered employee is working on full time; and

(ii) at the time of:

1. the accidental personal injury; or

2. the last injurious exposure of the covered employee to the hazards of an occupational disease.

(2) For purposes of a computation under paragraph (1) of this subsection, wages shall include:

(i) tips; and

(ii) *the reasonable value of housing, lodging, meals, rent, and other similar advantages that the covered employee received from the employer.*

Md.Code (1991, 1999 Repl.Vol.), § 9–602 of the Labor and Employment Article (emphasis added).

The Court of Appeals has recognized the nexus between the terms "payroll" and "average weekly wage" as they are used in the Act. In *Crowner v. Baltimore United Butchers Association,* the Court stated that, "[i]n the *Picanardi* case, we held that average weekly wages could not be calculated on any broader basis than that adapted for calculating premiums and rates of insurance, and that as premiums were calculated on a payroll basis, the compensation to be awarded an injured employee must be calculated on the same basis." 226 Md. 606, 611, 175 A.2d 7 (1961) (citing *Picanardi v. Emerson Hotel Co.,* 135 Md. 92, 108 A. 483 (1919)). The Court in *Picanardi* noted:

"It is quite clear that it is the purpose of the Workmen's Compensation Act to secure the payment of benefits, not from the unknown and uncontrolled assets of the individual employers, but ordinarily, at least, from a fund set apart in advance of losses, either in the shape of the State Accident Fund or in the shape of insurance. This fund is to be made up of premiums payable from time to time; and to the extent that experience makes it possible to foresee, the premiums are calculated to equal in the aggregate the benefits to be paid—in addition to incidental expenses with which we are not concerned. All the provisions of the Act concerning security for compensation are carefully designed to effectuate this plan.

"The State Accident Fund is created by premiums equal to fixed percentages of the money paid under employers'

payrolls. . . . Provision is made for the facilitation of calculation on the basis of these payrolls."

*Picanardi,* 135 Md. at 94, 108 A. 483 (quoting lower court opinion in *Picanardi v. Emerson Hotel Co.,* Bond, J., Baltimore City Court).

■ In this case, Mrs. Greise cooked breakfast for Pennel six days per week for twelve years. Pennel obtained a benefit from the meals, in that he did not have to purchase food with his own funds. We agree with the circuit court that these meals constituted compensation to Pennel for his labor and should therefore be included in the computation of his wages.[3] Given the relationship between the terms "wages" and "payroll," we further conclude that the meals were part of the payroll in this case.

■ This determination does not, however, end our analysis. We note that in *Picanardi,* the Court of Appeals held that "[i]t is clear the Legislature did not intend, as to insurance in the State Accident Fund, that board was to be included as wages unless its money value was fixed by the parties at the time of hiring." 135 Md. at 96, 108 A. 483. In this case, nothing in the record suggests that the monetary value of the meals was fixed by the parties when Pennel was hired. Due to changes in the language of the Act and the case law addressing this issue, however, we find that fixing the value of meals at the time of hiring is no longer a prerequisite to recovering the reasonable value of meals under the circumstances presented in this case.

When *Picanardi* was decided, section 18 of the Workmen's Compensation Act provided as follows:

---

3. During oral argument and in their brief to this Court, appellants argue that, because the word "meals" in § 9–602(a)(2)(ii) is "part of a series of words" including housing, lodging, and rent, the "meals" referred to "are meals in connection with living or sleeping accommodations." We disagree with appellants' interpretation of the Act. The Act does not limit the consideration of meals to a particular context; rather, meals are simply listed as another "advantage" to be included in the computation of wages.

> In computing the payroll the entire compensation received by every workman employed in extrahazardous work and insured in the State Accident Fund, within the meaning of this Act, shall be included, whether it be in the form of salary, wages, piecework, overtime, or any allowance in the way of profit-sharing, premium or otherwise, and whether payable in money, board or otherwise. *Provided the money value of board and similar advantages shall have been fixed by parties at the time of hiring.*

*Picanardi,* 135 Md. at 95–96, 108 A. 483 (quoting section 18 of the Workmen's Compensation Act, chapter 800 of the Acts of 1914, as amended by chapter 597 of the Acts of 1916) (emphasis added).

Unlike the language of the statute in 1919, the current Act makes no reference to any requirement that the value of board (meals) and similar advantages be fixed at the time of hiring. Rather, recent case law recognizes that such details may be unnecessary, as the value of meals, rent, lodging and similar advantages, consideration of which is necessary in the computation of wages under the Act, are easily converted into monetary figures with a present cash value.

For example, in *Barnett v. Sara Lee Corp.,* 97 Md. App. 140, 147, 627 A.2d 86, *cert. denied,* 332 Md. 702, 632 A.2d 1207 (1993), this Court was asked to determine whether pension benefits were included in the statutory definition of wages, § 9–602(a)(2)(ii), as "other similar advantage[s]." We held that they were not. Unlike housing, lodging, meals, and rent, the other benefits enumerated in the Act, fringe benefits such as pensions "are not benefits with a present value that is easily converted into a cash equivalent, and, rather, they essentially constitute a speculative interest." (Citing *Morrison–Knudsen Construction Company v. Director, OWCP,* 461 U.S. 624, 103 S.Ct. 2045, 76 L.Ed.2d 194 (1983).) In this case, the monetary value of the meals was not contested at trial, and remains uncontested on appeal. Indeed, the parties

stipulated that the annual value of the meals was $918.00.[4] As neither the current Workers' Compensation Act nor Maryland case law requires that this value be determined at the time of hiring, we find that the circuit court properly included the value of the meals in the computation of the Greise payroll. Accordingly, we affirm the court's determination that Pennel was a "covered employee" under the Act.

### Standard of Review Applied by the Circuit Court

Appellants further argue that the circuit court's decision must be reversed, and the case remanded for new proceedings, because the court "applied an incorrect standard of review." Although we recognize that in its final conclusion the court stated an incorrect standard of review, we do not find that the court actually applied that standard when deciding this case. Therefore, we decline to reverse and remand this case on that basis.

The circuit court's opinion and order concluded as follows:

Therefore, Employers' and Insurer's Motion for Summary Judgment is denied. Having failed to meet their burden of proof to overcome the presumption of correctness of the decision of the Workers' Compensation Commission, the decision of the Commission is affirmed.

We agree with appellants that where the only issue before the court is one of a purely legal nature, "an agency's identification or interpretation of the controlling law is entitled to no presumption of correctness; the reviewing court must apply the law as it understands it to be." *Supervisor v. Chase Associates,* 306 Md. 568, 574, 510 A.2d 568 (1986); *see also Comptroller v. Gannett,* 356 Md. 699, 707, 741 A.2d 1130 (1999) (and cases cited therein); *Supervisor v. Asbury Methodist Home,* 313 Md. 614, 626–27, 547 A.2d 190 (1988); *Barnes v. Myers,* 163 Md. 206, 209, 161 A. 279 (1932). In *Barnes,* the Court of Appeals stated as follows:

---

4. The value of the meals was based on $3.00 per day times six days per week times 51 weeks, which equals $918.00.

The terms and manner of employment being settled for the court in this instance, there was no issue of fact to be answered by a jury; it was for the court to declare the resulting relation. This must be so in a proceeding in which a reversal or modification of the commission's order is sought, as well as in any ordinary civil proceeding, for even though, . . . the decision of the commission is taken as *prima facie* correct, with the burden of proof cast upon the party attacking it, that decision cannot have an effect to change in any degree the legal principles which bear upon a settled, undisputed situation. There can be no such thing as a burden of proving legal principles.

*Barnes,* 163 Md. at 209, 161 A. 279.

Had the circuit court in this case actually applied the "presumption of correctness" standard of review, we may have had no choice but to reverse the court's judgment. The court did not, however, rely on this standard in reaching its conclusions. Rather, the court (1) recognized that no material facts were in dispute, (2) set forth the proper standard for deciding a motion for summary judgment, (3) stated the applicable considerations for statutory construction, and (4) applied each of these principles to the Act and the undisputed facts of this case. Thus, although the court incorrectly stated that appellants "failed to meet their burden of proof to overcome the presumption of correctness," that was not the standard of review the court actually applied in arriving at its decision. We therefore decline to reverse the circuit court's judgment on this basis.

### Implications of the Summary Judgment Motion

Appellants concede that "the parties stipulated to the material facts and the sole issue before the Circuit Court was to construe the statute." In addition, appellants recognize that the parties agreed to proceed in the circuit court on a motion for summary judgment *filed by the appellants.* On appeal, however, appellants argue that the court erred in affirming the Commission's order "based on a motion for summary judgment" because material facts were in dispute. Specifical-

ly, appellants maintain that Pennel testified before the Commission that he did not consider the meals to be part of his compensation, but that he filed an affidavit accompanying his answer to appellants' motion for summary judgment in which he asserted that he believed he was entitled to receive breakfast as part of his employment.

First, we note that, even if material facts were in dispute in this case, the court could only have erred if it granted the motion. *See* Maryland Rule 2–501(e) (summary judgment shall be entered "in favor of or against the moving party if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law"). In this case, however, the motion for summary judgment was denied. Thus, given the parties' stipulation and the denial of the summary judgment motion, we are bewildered by appellants' position as to this issue. Because no facts were in dispute, material or otherwise, when the circuit court denied the motion, we find no merit in appellants' argument on appeal that the court erred in basing its decision on a motion for summary judgment.

Moreover, we are unclear as to what alternative course of action appellants would have had the court pursue. Upon denying the motion for summary judgment, no other motions or issues were pending before the court. Therefore, the only remaining task for the court was to affirm the Commission's order. Indeed, the parties even stipulated that if the motion for summary judgment was denied the Commission's order would be affirmed. Thus, inconsistent with their position on appeal, appellants stipulated that the circuit court's affirmance of the Commission's order would be "based on" the motion for summary judgment.

Finally, we disagree with appellee's argument that "the appellants should not be permitted to proceed on appeal in light of the agreement included in the stipulation." As we previously noted, the parties agreed that if the motion for summary judgment was denied by the court the award of the

Workers' Compensation Commission would be affirmed. In his brief to this Court, appellee argues that appellants' "appeal to this Court is a breach of the stipulated agreement among the parties." We disagree.

■ We find that appellants did not waive their right to appeal the circuit court's judgment by virtue of the stipulation. At most, the parties simply agreed that if the court denied the summary judgment motion, neither party would substantively[5] pursue any other action in the circuit court, such as filing additional motions addressing the merits of the case. The stipulation did not provide, however, that the parties would forego *any* additional legal action, such as an appeal of the circuit court's judgment, if the motion was denied. Without an explicit agreement to that effect, we will not read the stipulation in such a way as to deny appellants their right to appeal.

### *Cross–Appeal—Greise as a Party Plaintiff*

In his cross-appeal, appellee argues that the circuit court erred in allowing Greise to join in the appeal as a party plaintiff, as Greise did not timely file a notice of appeal to this Court. In support of his argument, appellee relies on Maryland Rules 8–201 and 8–202, which set forth the method of securing review in this Court. Rule 8–201 states, *inter alia,* that "the only method of securing review by the Court of Special Appeals is by the filing of a notice of appeal within the time prescribed in Rule 8–202." Rule 8–202(a) provides that, "[e]xcept as otherwise provided in this Rule or by law, the notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Finally, Rule 8–202(e) states that, "[i]f one party files a timely notice of appeal, any other party may file a notice of appeal within ten days after the date on which the first notice of appeal was filed or within any longer time otherwise allowed by this rule."

---

5. This is in contrast to filing, for example, a notice of appeal with the circuit court clerk, pursuant to Rule 8–201(a), to later pursue the matter in this Court.

Rather than filing a timely notice of appeal, Greise filed a "Motion to Join Appeal as Party Plaintiff." This motion was filed beyond the time permitted in Rule 8–202(e). Therefore, appellee contends, Greise should not have been permitted to join in this appeal. We disagree.

 As this Court held in *Maxwell v. Ingerman*, 107 Md.App. 677, 670 A.2d 959, *cert. denied*, 344 Md. 117, 685 A.2d 451 (1996), the time requirement in Rule 8–202(e) is not jurisdictional. Therefore, this Court has the "power to entertain" appeals by other parties filed later than the time allowed by the rule. *Id.* at 680, 670 A.2d 959. In *Maxwell*, we explicitly stated, "We shall adopt the view that the time requirement in Rule 8–202(e) is *not* jurisdictional in nature but rather serves simply to limit the scope of review." *Id.* at 681, 670 A.2d 959 (emphasis in original).

From a jurisprudential perspective, there is much to be said for the view that the initial appeal, timely filed, suffices to invoke the jurisdiction of the Court over the entire case. . . . Upon the filing of that appeal, all issues become open for potential consideration, limited only by standing and preservation impediments—e.g., raising the issue below, presenting a sufficient record, and properly raising the issue in the briefs. . . . The time requirement for the initial appeal has far greater significance and thus justifies a jurisdictional mantle. The true finality of the judgment is affected. That is not so much the case with cross-appeals, for once one appeal is timely noted, the parties and, constructively, the world, know that the judgment is in some potential jeopardy.

*Maxwell*, 107 Md.App. at 682, 670 A.2d 959.[6]

 In this case, once the Fund filed a timely notice of appeal, Pennel was on notice that the court's judgment was in potential jeopardy. At that time, "all issues became open for

---

6. We recognize that the holding in *Maxwell* was in the context of a cross-appeal filed beyond the time limitations in the rule. This factual distinction is immaterial, however, as the Court's holding addressed Rule 8–202(e) in its entirety.

consideration" by this Court, limited by the doctrines of standing and preservation. Here, the only issue before us was whether appellee was a "covered employee" within the meaning of the Workers' Compensation Act. The scope of our review was thus limited to this question. When Greise filed a motion to join in the appeal, the scope of review did not broaden. Indeed, the brief Greise filed in this Court "adopt[ed] in its entirety the brief of March 7, 2000, filed by the Uninsured Employers' Fund," adding no additional issues for our review. Regardless of these considerations, however, the Court's holding in *Maxwell* makes it clear that the time limitation in Rule 8–202(e) is not jurisdictional. Therefore, the court did not err in permitting Greise to join in the appeal.

### Conclusion

We hold that the circuit court properly included the value of the breakfasts prepared for appellee in its computation of "payroll" under the Workers' Compensation Act. In addition, we hold that the court applied the correct standard of review in reaching its decision and that Greise was properly joined in the appeal. Therefore, we affirm the judgment of the Circuit Court for Allegany County.

**JUDGMENT AFFIRMED.**

**COSTS TO BE PAID BY APPELLANTS.**