724 A.2d 667

**Joseph P. SACCHET, Warden,**

v.

**Robert BLAN.**

**No. 57, Sept. Term, 1998.**

Court of Appeals of Maryland.

Feb. 22, 1999.

Richard B. Rosenblatt, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for Petitioner.

Wiley S. Rutledge (Wiley S. Rutledge, P.A., on brief), Hagerstown, for Respondent.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, CHASANOW, RAKER, WILNER and CATHELL, JJ.

RAKER, Judge.

This case presents a single question of statutory interpretation of a provision within Article 27 of the Maryland Code: Is "manslaughter by automobile" under § 388 a "crime of violence" as defined by § 643B(a) for purposes of determining an inmate's good conduct credits pursuant to § 700(d)? We shall hold that manslaughter by automobile is not such a crime.

## I.

The relevant facts and procedural history of this case, gleaned primarily from the parties' stipulation in the habeas corpus proceeding which gave rise to Petitioner's appeal, are as follows:

Respondent was convicted of manslaughter by automobile pursuant to Maryland Code (1957, 1996 Repl.Vol., 1998 Suppl.) Article 27, § 388.[1] In September, 1995, the Circuit Court for Frederick County sentenced Respondent to a term of incarceration of ten years, seven years suspended. Prior to March, 1997, the Division of Correction (D.O.C.) had considered § 388 offenses to be *excluded* from the list of offenses enumerated as a "crime of violence" in § 643B(a) and cross-referenced under § 700(d)(2), dealing with "Good Conduct Deductions" for prison inmates. In accordance with this interpretation, upon Respondent's entry into prison in September, 1995, the D.O.C. awarded him ten "good conduct credits" per month as

---

1. Unless otherwise specified, all subsequent statutory references shall be to Maryland Code (1957, 1996 Repl.Vol., 1998 Supp.) Article 27.

prescribed by § 700(d)(3). This calculation established April 3, 1997 as Respondent's "mandatory supervision" release date, pursuant to Maryland Code (1957, 1997 Repl.Vol., 1998 Supp.) Article 41, §§ 4–501(13) and 4–612, provided he comply with the requirements of the good conduct award. There is no dispute that Respondent maintained himself accordingly; he did nothing during the course of his incarceration to warrant removal or deduction of his good conduct credits.

In March, 1997 the D.O.C. reconsidered its interpretation of § 643B(a), and from that time forward has classified § 388 offenses as *included* within the definition of "crime of violence," thus calculating the good conduct credits for § 388 offenders at the rate of only five days per month of incarceration, pursuant to § 700(d)(2). Consequently, the D.O.C. recalculated Respondent's good conduct award and established his mandatory supervision release date as September, 1997.

Respondent filed a petition for habeas corpus, challenging the D.O.C.'s re-interpretation of § 643B(a) as it applied to the crime of manslaughter by automobile under § 388, and as it affected the calculation of his good conduct credits under § 700(d). The Circuit Court for Washington County determined after a hearing that manslaughter by automobile is not included as a crime of violence under the list of § 643B(a) offenses and, consequently, that good conduct credits were to be awarded Respondent at the rate of ten days per month in accordance with § 700(d)(3). The circuit court further ordered, on April 18, 1997, that Respondent "be released under mandatory supervision forthwith." The State filed a timely appeal to the Court of Special Appeals which affirmed the circuit court in a reported opinion. *See Sacchet v. Blan,* 120 Md.App. 154, 706 A.2d 620 (1998). The State thereafter filed a timely petition for writ of certiorari which we granted in order to address the important issue presented.

## II.

Manslaughter by automobile is a statutory offense in Maryland. The statute currently reads, in pertinent part, as follows:

## § 388. Manslaughter by automobile, vessel, etc.. . .

Every person causing the death of another as the result of the driving, operation or control of an automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle in a grossly negligent manner, shall be guilty of a felony to be known as "manslaughter by automobile, motor vehicle, locomotive, engine, car, streetcar, train, vessel, or other vehicle," and the person so convicted shall be sentenced to jail or the house of correction for not more than 10 years, or be fined not more than $5,000 or be both fined and imprisoned.

When the General Assembly originally enacted this legislation in 1941,[2] a violation of the statute constituted a misdemeanor offense and carried a maximum term of imprisonment of three years. Several amendments followed. In 1982, the Legislature increased the maximum term of imprisonment to five years, *see* Laws of Maryland, 1982, Ch. 92, and then again, in 1989, to ten years, *see* Laws of Maryland, 1989, Ch. 515. In 1997, violation of § 388 was reclassified as a felony. *See* Laws of Maryland, 1997, Chs. 372, 373. Importantly, none of these changes had occurred prior to 1975, the year of § 643B's enactment.[3] Manslaughter by automobile had thus comprised a criminal offense under Maryland's statutory law for thirty-four years when the General Assembly designated certain offenses as "crimes of violence" under § 643B(a). That statute provides, in its current form and in pertinent part, as follows:

## § 643B. Mandatory sentences for crimes of violence.

---

**2.** This statute was originally codified as § 436A. *See* Laws of Maryland, 1941, Ch. 414; Maryland Code (1939, 1947 Cum.Supp.) Article 27, § 436A. Thereafter, it appeared as § 455 of Article 27 of the 1951 Code. Finally, in 1957, the statute was re-codified as § 388 of Article 27.

**3.** Section 388 had also been amended prior to 1975, first in 1949, *see* Laws of Maryland, 1949, Ch. 5, § 436A, and again in 1972, *see* Laws of Maryland, 1972, Ch.181, § 28. These changes, however, do not affect our analysis of the issues presented in this case.

(a) *Crime of violence defined* ...—As used in this section, the term "crime of violence" means abduction; arson in the first degree; kidnapping; *manslaughter, except involuntary manslaughter;* mayhem and maiming, as previously proscribed under §§ 384, 385, and 386 of this article; murder; rape; robbery; robbery with a deadly weapon; carjacking or armed carjacking; sexual offense in the first degree; sexual offense in the second degree; use of a handgun in the commission of a felony or other crime of violence; an attempt to commit any of the aforesaid offenses; assault in the first degree; and assault with intent to murder, assault with intent to rape, assault with intent to rob, assault with intent to commit a sexual offense in the first degree, and assault with intent to commit a sexual offense in the second degree, as these crimes were previously proscribed under former § 12 of this article. [Emphasis added.]

The calculation rate for the number of good conduct credits an inmate is to receive during the period of incarceration for a particular crime depends upon whether the crime is included within § 643B(a)'s definition of "crime of violence." The bifurcated classification system, established by the General Assembly in 1992, provides as follows:

§ 700. **Diminution of term of confinement of prisoner.**

\* \* \* \* \* \*

(d) *Good conduct deduction.*—(1) An inmate shall be allowed a deduction in advance from the inmate's term of confinement, subject to the inmate's future good conduct.

(2) For an inmate whose term of confinement includes a consecutive or concurrent sentence for either a crime of violence as defined in Article 27, § 643B of the Code or a crime of manufacturing, distributing, dispensing, or possessing a controlled dangerous substance as provided under Article 27, § 286 of the Code, this deduction shall be calculated at the rate of 5 days for each calendar month, and on a prorated basis for any portion of a calendar month,

from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement.

(3) For all other inmates, this deduction shall be calculated at the rate of 10 days for each calendar month, and on a prorated basis for any portion of a calendar month, from the first day of commitment to the custody of the Commissioner through the last day of the inmate's maximum term of confinement.[4]

The issue we are called upon to resolve in this case is whether "manslaughter by automobile" in § 388 is included within the "crime of violence" of "manslaughter" in § 643B(a). Our answer in turn will determine the rate of good conduct credits under § 700 that should apply to an inmate convicted of an offense in violation of § 388.

### III.

As this Court has often declared, the cardinal rule of statutory construction is to ascertain and give effect to the true legislative intent that lies behind the statutory enactment itself. *See, e.g., Catonsville Nursing v. Loveman,* 349 Md. 560, 570, 709 A.2d 749, 753 (1998); *Jones v. State,* 311 Md. 398, 405, 535 A.2d 471, 474 (1988). The primary indication of legislative intent is found in the plain language of the statute, with the words given their ordinary and natural meanings. *See Whack v. State,* 338 Md. 665, 672, 659 A.2d 1347, 1350 (1995); *Parrison v. State,* 335 Md. 554, 559, 644 A.2d 537, 539 (1994). Both parties before this Court, and indeed before the circuit court and Court of Special Appeals, have argued that the plain language of the key statutory provision in question, § 643B(a), favors the opposite interpretation, and outcome, each respectively seeks.

---

4. Prior to October 1, 1992, § 700 had provided that all inmates be assigned good conduct credits at the rate of five days per month; there was no distinction between "crimes of violence" and all other crimes. *See* Maryland Code (1957, 1992 Repl.Vol.) Article 27, § 700(d)(1)–(2).

The State asserts that the clear legislative intent embedded in the phrase "manslaughter, except involuntary manslaughter" was to include *all forms* of manslaughter, including § 388's manslaughter by automobile, within the enumeration of crimes of violence, except for common law involuntary manslaughter. Had the General Assembly intended to include only common law voluntary manslaughter it would have employed that term alone rather than use the formulation it did. Moreover, if the Legislature had desired to except manslaughter by automobile from the enumerated offenses, it easily could have done so but purposefully chose not to. Respondent retorts that "manslaughter, except involuntary manslaughter" plainly indicates, instead, that only the two common law varieties of manslaughter were being contemplated by the drafters of § 643B(a): the phrase simply provides that voluntary manslaughter is included within the list of crimes of violence, involuntary manslaughter excluded. Furthermore, had the General Assembly wanted to include manslaughter by automobile as a crime of violence, it easily could have done so but purposefully elected not to. The plain meaning of § 643B(a) thus appears plainly different to the two parties at bar.

Respondent similarly propounds that the General Assembly's failure to modify the manslaughter phrase in § 643B(a) is proof that manslaughter by automobile is not a crime of violence thereunder. This is so, he argues, because the Legislature has several times revised other phrases within the same subsection in order to add to or clarify the list of crimes of violence. Especially instructive is the 1981 amendment to § 643B(a) which appended to the common law crime of "robbery" the statutory offense of "robbery with a deadly weapon," under § 488. *See* Laws of Maryland, 1981, Ch. 353. Moreover, the Legislature's inaction with respect to the manslaughter language is particularly revealing, if § 388 offenses were originally meant to be included in 1975, in light of the fact that until the D.O.C.'s re-interpretation of § 643B(a) in 1997, the "prosecutors and the courts ... [and] the Division of Correction" had essentially "thwarted" the intent of the Gen-

eral Assembly for twenty-two years without any legislative correction. The Court of Special Appeals found this purported decision by the Legislature not to amend the manslaughter language in § 643B(a) dispositive:

> [Sections 388 and 643B] have been revisited several times by a legislature that meets at least annually, and at no time has the legislature included manslaughter by automobile as a crime of violence. They could have done so easily but they did not. The only interpretation is that the omission was deliberate.

*Sacchet v. Blan,* 120 Md.App. 154, 157, 706 A.2d 620, 621 (1998).

The State might have responded before this Court that the reason for this supposedly purposeful inaction by the General Assembly was the legislators' contentment with the "fact" that manslaughter by automobile was already included within the enumerated offenses, which contention of fact the State continues to press. The State's counter argument is different, however. The State insists that "no conclusion can be drawn from [the] historical application" of § 643B because it is only since the Legislature's 1992 bifurcation of the distribution of good conduct credits between crimes of violence and other crimes that the inclusion *vel non* of § 388 as a crime of violence has become relevant.[5]

---

**5.** According to the State, "automobile manslaughter historically has not been utilized as a predicate conviction for a repeat offender sentence" under § 643B(b)–(d). Accepting this assertion to be true, we note that the reason for such practice may not be one of pure prosecutorial discretion but rather the recognition by the prosecutorial arm of the State that manslaughter by automobile is excepted from § 643B(a) altogether. For, certainly, the State cannot reasonably argue that a § 388 offense is a crime of violence for one or more purposes, e.g. calculation of good conduct credits, under § 700(d), and enablement of crime victims to request that a parole hearing be open to the public, under Article 41, § 4–507(c), but not for another purpose, utilization as a predicate conviction for repeat offender sentencing, under § 643B(b)– (d). Indeed, as discussed in Part I, *supra,* the D.O.C. itself had for nearly five years considered § 388 offenses to be excluded from the § 643B(a) enumeration of crimes of violence for purposes of applying

We conclude that the answer to the question before us lies neither in any supposed plain meaning of the phrase "manslaughter, except involuntary manslaughter" as enacted by the 1975 General Assembly nor in any purported inaction with respect to the same language by the successive Legislatures. Resolution of this case does not require us to rely upon what the Legislature could have done or upon what it has not done. As we have seen, and as is almost always the case, each of these factors is subject to arguably equally plausible interpretations, if all we look to is the single, contested phrase as if in a vacuum. It is for this reason that viewing statutory language in isolation is a method of construction which this Court eschews. *See In re Douglas P.*, 333 Md. 387, 393, 635 A.2d 427, 430 (1994); *Kaczorowski v. City of Baltimore,* 309 Md. 505, 514–15, 525 A.2d 628, 632–33 (1987). Instead, we construe the statute as a whole, *Blondell v. Baltimore Police,* 341 Md. 680, 691, 672 A.2d 639, 645 (1996); examine the language of the statute in the context in which it was adopted, *Motor Vehicle Admin. v. Mohler,* 318 Md. 219, 225, 567 A.2d 929, 932 (1990); and consider the general purpose, aim, or policy behind the statute, *C.S. v. P.G. County Social Services,* 343 Md. 14, 24, 680 A.2d 470, 475 (1996). Applying these principles of statutory interpretation, we conclude that the list of crimes expressly included under § 643B(a) makes clear that the General Assembly intended not to include manslaughter by automobile as a crime of violence.

A strong factor in leading us to conclude that manslaughter by automobile is excluded from § 643B(a) is that, unlike all other included offenses, a conviction under § 388 does not require proof of any criminal intent on the part of the offender but only a showing of gross negligence. *See Connor v. State,* 225 Md. 543, 558, 171 A.2d 699, 707 (1961)(Section 388 "adopted the common-law standard of gross negligence as the minimum requirement to convict a defendant for an unintentional killing in the course of doing a lawful act in an unlawful

---

§ 700(d). We presume that the same interpretation was used for purposes of applying Article 41, § 4–507(c).

manner. . . .").  *See also Faulcon v. State*, 211 Md. 249, 257, 126 A.2d 858, 862 (1956); *Hughes v. State*, 198 Md. 424, 431, 84 A.2d 419, 422 (1951).  Moreover, as Respondent aptly points out, "[t]he only other offense mentioned in § 643B(a) which does not require intent is involuntary manslaughter," the singular offense explicitly excluded by the General Assembly from the listed crimes of violence.  It would be anomalous for the Legislature to see fit that all enumerated crimes of violence but one, which warrant distinct treatment of the offender by the courts and prisons of this State, incorporate the requirement that the offender have acted intentionally, while at the same time expressly excepting a crime whose conviction necessitates no proof of intent.  It has long been the prerogative and practice of this Court to avoid interpretation of a statute that effects an unreasonable or illogical result or one that is inconsistent with common sense.  *See, e.g., Condon v. State*, 332 Md. 481, 491–92, 632 A.2d 753, 758 (1993); *Curtis v. State*, 284 Md. 132, 149, 395 A.2d 464, 474 (1978).

Further indicative of § 388's exclusion from the roster of violent crimes under § 643B(a) is another untenable legal inconsistency that would result from adopting the opposite interpretation.  After setting out the initial list of crimes of violence, in which appears the crime of "manslaughter, except involuntary manslaughter," § 643B(a) stipulates that also included is "an attempt to commit any of the aforesaid offenses." As this Court announced in *Cox v. State*, 311 Md. 326, 534 A.2d 1333 (1988):

> There is an exception ... to the general rule that attempt applies to all offenses.  Crimes that do not involve intent to do a criminal act generally fall outside the scope of the crime of attempt.  If there is no intent to do a wrongful act, then usually there is no crime of attempt.

*Id.* at 331, 534 A.2d at 1335.  In addition, we stated, "[S]o long as the crime of attempt is deemed to require an intent-type of mental state, there can be no such thing as an attempt to commit criminal negligence involuntary manslaughter." *Id.* at 332, 534 A.2d at 1336 (quoting 2 W. LaFave & A. Scott,

SUBSTANTIVE CRIMINAL LAW § 6.2, at 27 (1986) (brackets in original)). By the same token, whereas manslaughter by automobile, like involuntary manslaughter, requires only proof of gross negligence and not of criminal intent, it would stand to reason that there does not exist in Maryland the crime of attempt to commit manslaughter by automobile. Were a violation of § 388 included as a crime of violence within § 643B(a), the latter statute arguably would recognize a non-offense and accord harsher treatment to those who, impossibly, "commit" it. We could not countenance such an anomaly.

■ Another possible interpretation is that the attempt language is simply ineffective as it relates to the allegedly included offense of manslaughter by automobile. We have, however, repeatedly applied the principle of statutory construction that an interpretation of one provision of a statute that negates another should be avoided. *See In re Wallace W.*, 333 Md. 186, 192, 634 A.2d 53, 56–57 (1993) (restating the basic rule of statutory construction that no word, clause, sentence or phrase should be rendered surplusage, superfluous, meaningless, or nugatory.) *See also Montgomery County v. Buckman*, 333 Md. 516, 523–24, 636 A.2d 448, 452 (1994).

The earlier penalty provisions and crime classification of § 388, in effect at the time of the Legislature's enactment of § 643B, also demonstrate the legislative intent not to include manslaughter by automobile as a crime of violence. In 1975, manslaughter by automobile was classified as a misdemeanor offense and a conviction under § 388 allowed for a maximum term of imprisonment of three years. Meanwhile, a conviction of the felony offense of involuntary manslaughter—again, a crime expressly excluded by the General Assembly from the category of crimes of violence—provided for a period of incarceration of up to ten years, in accordance with § 387. It hardly makes sense that the General Assembly, within the singular phrase "manslaughter, except involuntary manslaughter," intended to include manslaughter by automobile within § 643B(a) so as to treat § 388 offenders more harshly than involuntary manslaughter offenders by subjecting them to long-term mandatory sentencing for subsequent convictions of

a crime of violence, yet punish those same § 388 offenders less severely in terms of potential maximum sentences for a § 388 conviction not subject to repeat offender treatment.[6] The State's reliance on this Court's holding in *Forbes v. State*, 324 Md. 335, 597 A.2d 427 (1991) is misplaced. There we held that the conduct of a person who unintentionally causes a death as a result of grossly negligent operation of a motor vehicle cannot be the basis for a conviction of common law involuntary manslaughter, yet such conduct may support a conviction of statutory manslaughter by automobile. *See id.* at 336, 597 A.2d at 428. That the two offenses are thus "separate and distinct crimes," as the State describes them, does not necessitate that they be treated differently under § 643B(a) any more than the status of arson and murder as separate and distinct crimes would require that they be treated differently. Indeed, arson and murder are accorded identical treatment under § 643B(a), as each is expressly included as a crime of violence.

Finally, the State has argued that this Court's interpretation of the generic term "rape" in § 643B(a) as embracing both common law and statutory varieties of the offense warrants a similar interpretation of the word "manslaughter." In *Blandon v. State*, 304 Md. 316, 498 A.2d 1195 (1985), we held that the statutory offense of rape in the second degree is a crime of violence under § 643B(a) where the General Assembly employed only the term "rape." *Id.* at 322, 498 A.2d at

---

6. As originally enacted, § 643B(b) requires that a person convicted for a fourth time of a crime of violence be sentenced to life imprisonment without the possibility of parole, so long as that person has served three separate terms of confinement on the three previous convictions. The original statute contained only subsections (a) and (b). *See* Laws of Maryland, 1975, Ch. 253. The Legislature added subsection (c) in 1977, which mandates that a sentence of at least twenty-five years of imprisonment be imposed for a third conviction of a crime of violence, so long as the defendant has served at least one term of confinement as a result of a conviction of a crime of violence. *See* Laws of Maryland, 1977, Ch. 678, § 1. Current subsection (d), added in 1994, directs that a person convicted of a crime of violence for a second time, after having been incarcerated for the first offense, be confined to prison for not less than ten years. *See* Laws of Maryland, 1994, Chs. 716, § 1; 717, § 1.

1198. The State misapprehends the rationale underlying our decision in that case. The reason second degree rape is a crime of violence under § 643B(a), despite its not being expressly included, is that it shares "virtually identical ... elements *and potential penalties* " with second degree sexual offense, an explicit crime of violence. *Id.* at 320, 498 A.2d at 1197 (emphasis added). As Respondent argues, to the extent that *Blandon* stands for the proposition that two crimes virtually identical with respect to their elements and potential penalties should be treated equally for purposes of interpreting § 643B(a), this principle favors treating manslaughter by automobile the same as involuntary manslaughter. Again, the General Assembly has now equated the potential maximum penalty for § 388 offenses with that allowed for a conviction of voluntary manslaughter or involuntary manslaughter, under § 387. Yet manslaughter by automobile is certainly more akin to involuntary manslaughter by virtue of the two offenses' shared prerequisite of gross negligence, than it is to voluntary manslaughter with its requirement of criminal intent.

Because manslaughter by automobile is not included as a crime of violence under § 643B(a), the circuit court appropriately granted the petition for writ of habeas corpus and properly ordered that Respondent be awarded good conduct credits at the rate of ten days per month of his confinement in accordance with § 700(d)(3).

*JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY DEPARTMENT OF PUBLIC SAFETY AND CORRECTIONAL SERVICES.*