759 A.2d 755

**In re ADOPTION/GUARDIANSHIP NO. CCJ14746 in the Circuit Court for Washington County.**

**No. 134, Sept. Term, 1999.**

Court of Appeals of Maryland.

Sept. 13, 2000.

Sherrie B. Glasser, Asst. Public Defender (Stephen E. Harris, Public Defender, on brief), Baltimore, for petitioner.

Carol Ann Smith, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on brief), Baltimore, for respondent.

Brief of the National Ass'n of Social Workers and the Maryland Chapter of the National Ass'n of Social Workers, the American Board of Examiners in Clinical Social Work, the Clinical Social Work Federation and its Member Maryland and Greater Washington Societies, the Family Therapy Practice Academy of the Clinical Social Work Federation, the Clinical Social Work Guild and the National Membership Committee on Psychoanalysis in Clinical Social Work, Inc., and Clinical Social Work Guild No. 49 of the Office and Professional Employees International Union, AFL–CIO, CLC, as Amici Curiae filed on behalf of the Respondent.

Carolyn Jacobs, Blank, Rome, Comisky & McCauley, LLP, Baltimore, Carolyn I. Polowy, National Ass'n of Social Workers, Washington, DC, for Amicus Curiae, the National Ass'n of Social Workers and the Maryland Chapter of the National Ass'n of Social Workers.

Peter M. Brody, Ropes & Gray, Washington, DC, for Amicus Curiae, American Bd. of Examiners in Clinical Social Work.

Howard N. Feldman, Dickstein, Shapiro, Morin & Oshinsky, LLP, Washington, DC, for Amici Curiae, the Clinical Social Work Federation, the Maryland Society for Clinical Social Work, Inc., the Greater Washington Society for Clinical Social Work, Inc., the Family Therapy Practice Academy of the Clinical Social Work Federation, the Clinical Social Work Guild and The National Membership Committee on Psychoanalysis in Clinical Social Work, Inc., and Clinical Social Work Guild No. 49 of the Office and Professional Employees International Union, AFL–CIO, CLC.

Melvin S. Schwarzwald, Schwarzwald, Rock & McNair, Cleveland, OH, for Clinical Social Work Guild No. 49 of the Office and Professional Employees International Union, AFL–CIO, CLC.

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY, RAKER, WILNER, CATHELL and HARRELL, JJ.

RAKER, Judge.

The question presented in this case is whether the Circuit Court for Washington County erred in permitting a licensed clinical social worker to testify as an expert witness and to provide diagnostic expert testimony. The Court of Special Appeals affirmed the judgment of the Circuit Court, holding that the trial court neither erred nor abused its discretion in receiving the opinions. We shall affirm.

Petitioner Shannon P. is the mother of a minor child, also named Shannon P.,[1] born August 20, 1993. Shannon first came to the attention of the Washington County Department of Social Services (WCDSS) when she was placed into foster care for three days in November, 1994. Intensive Family Services[2] were provided to the family until February, 1995.

---

**1.** Throughout this opinion, the child will be referred to as "Shannon" and the Petitioner will be referred to as "Ms. P." or "Petitioner."

**2.** Intensive Family Services is a service provided by the Department of Social Services to a family that is at risk of an out-of-home placement of a child. *See* COMAR 07.02.01.

In July, 1995, Ms. P. asked WCDSS to provide assistance and WCDSS again provided time-limited intervention services. The case was closed in October, 1995, due to Ms. P.'s non-compliance.

In December, 1996, Ms. P. again requested help with parenting and the case was again closed for non-compliance. Around February, 1997, WCDSS received a physical abuse report concerning a cigarette burn on Shannon's forehead, and bruises on her head. This prompted WCDSS to open a Child Protective Services case. Following an investigation by WCDSS, Ms. P. agreed to a voluntary placement of Shannon with a family friend. During this placement, Ms. P. was incarcerated for one month for a violation of probation. In November, 1997, Ms. P. was admitted to a hospital following a drug overdose. At the same time, Child Protective Services determined that Shannon was neglected. On January 15, 1998, Ms. P. was convicted of the criminal offenses of theft and possession of controlled dangerous substances and sentenced to three years at the Maryland Correctional Institution for Women. On the same day, Shannon was placed in foster care, where she has remained ever since. Since March, 1999, Shannon has lived in a prospective adoptive foster home. The foster parents wish to adopt Shannon, and WCDSS plans to consent to the adoption should it obtain guardianship with the right to consent.

After a hearing on March 19, 1998, Shannon was adjudicated a child in need of assistance by the Circuit Court for Washington County, pursuant to Maryland Code (1973, 1998 Repl.Vol., 1999 Supp.) § 3–812 of the Courts and Judicial Proceedings Article, and committed to the custody of WCDSS. On July 30, 1998, WCDSS filed in the Circuit Court for Washington County a petition for guardianship with the right to consent to adoption or long-term care short of adoption.[3]

---

3. When a petition for guardianship with the right to consent to adoption or long-term care short of adoption is granted, the court terminates the parental rights of the parents. *See* Maryland Code (1984, 1999 Repl.Vol., 1999 Supp.) § 5–317(f) of the Family Law Article ("A decree

The court entered an Order of Default against Shannon's father, Donald P., whose whereabouts were unknown, after he failed to respond within the prescribed time to a posted notice of the petition. Ms. P. appeared with counsel at the hearing on the petition on March 25, 1999, and contested the petition.

Dr. Carlton Munson testified for WCDSS at the March 25, 1999 hearing; his testimony is the subject of this appeal. Dr. Munson is a Licensed Certified Social Worker–Clinical, holding a license issued pursuant to Maryland Code (1981, 1994 Repl.Vol., 1999 Supp.) § 19–302(d)(2) of the Health Occupations Article (the Act).[4] He earned a Bachelor of Arts degree, a Masters of Social Work and a Ph.D. in clinical social work from the University of Maryland School of Social Work. He has been certified by the American Board of Examiners in clinical social work as a Board Certified Diplomate, and has been employed as a professor and director of the doctoral program at the University of Maryland School of Social Work.

With reference to his experience, Dr. Munson testified that he had performed approximately four to five evaluations per month, two-thirds of these on children and one-third on adults. He further testified that over the previous ten years, he had performed three to four hundred evaluations and that he was familiar with the components and various tools to diagnose mental disorders. WCDSS offered him as an expert in clinical social work to testify to his evaluation of the mental disorders of Petitioner and Shannon. Petitioner objected on the ground that Dr. Munson was not trained as a psychiatrist or psychologist. The court overruled the objection and permitted Dr. Munson to testify as an expert in clinical social work.

Dr. Munson then testified that he met with Shannon for two hours on February 23, 1999, and after administering certain tests, he concluded that, based on the American Psychiatric

of guardianship ... terminates the natural parents' rights, duties, and obligations toward the child.").

4. Unless noted otherwise, all subsequent statutory references shall be to Maryland Code (1981, 1994 Repl.Vol., 1999 Supp.) Health Occupations Article.

Association's *Diagnostic and Statistical Manual of Mental Disorders* (4th ed.1994) (hereinafter DSM–IV), Shannon suffered from "attention deficit hyper-activity disorder, combined type, moderate" and from "borderline intellectual functioning."

Dr. Munson testified that he had met with Ms. P. for about two hours, administered a series of tests to her, and reviewed her medical records. On the basis of the DSM–IV, he diagnosed her with schizophrenia, disorganized type and dissociative disorder. During the interview, Ms. P. told Dr. Munson that she was an abuser of alcohol and a user of PCP, crack cocaine and marijuana, that she had been physically abused and neglected as a child, that she had a history of mental illness and treatment, including five psychiatric hospitalizations, and that she had been a victim of domestic violence in her relationships with her estranged husband and other men. He testified that at the time he saw her, she was taking Doxepin, Prozac, Vistaril and Haldol, medications for depression and psychotic related disorders.

Dr. Munson testified that, based on his diagnosis, it was his opinion that Petitioner's ability to manage and parent Shannon was impaired because of her own chronic mental illness. He further opined that it would be between three and five years before she would be in a condition to support and care for a child and meanwhile, Shannon's safety and well-being would be at risk. Petitioner objected to Dr. Munson's testimony, on the ground that he was not qualified to diagnose and give expert opinions regarding Ms. P.'s and Shannon's conditions.

On March 25, 1999, the Circuit Court granted the petition and terminated parental rights. Petitioner noted a timely appeal to the Court of Special Appeals. In an unreported opinion, the intermediate appellate court affirmed the judgment of the Circuit Court, holding that the court did not err in admitting the testimony of the licensed certified social worker-clinical, Dr. Munson. We granted Ms. P.'s petition for writ of certiorari.

Each party before this Court has argued that a proper interpretation of the Act, which governs the practice of social

work in Maryland, leads to opposite results. Petitioner argues that the trial court erred in admitting the testimony of Dr. Munson because the opinion he expressed was a medical diagnosis constituting the "practice of medicine" as that term is defined in § 14–101 of the Act, and as such, is prohibited by § 19–103(b). Section 19–103(b) states that "[t]his title may not be construed to authorize any person licensed as a social worker to engage in the practice of medicine." Alternatively, Petitioner argues that if Dr. Munson is qualified to render a diagnosis, he may do so only after a referral from a physician, and in any case, he may not give expert testimony of that diagnosis in court.

WCDSS argues that based on the plain language of § 19–101(f), a licensed certified social worker-clinical is permitted to diagnose mental and emotional disorders and to rely on that diagnosis in forming an opinion as to the likelihood of reunification of parent and child in a guardianship proceeding.

In order to resolve these issues, we must determine the intent of the Legislature. We invoke the cardinal rule of statutory construction—to ascertain and give effect to the true legislative intent that lies behind the statutory enactment itself. *See Sacchet v. Blan,* 353 Md. 87, 92, 724 A.2d 667, 669 (1999). The primary indication of legislative intent is found in the plain language of the statute, with the words given their ordinary and natural meanings. *See Cooper v. Sacco,* 357 Md. 622, 629, 745 A.2d 1074, 1077 (2000); *Sacchet,* 353 Md. at 92, 724 A.2d at 669 (1999). In addition, we often consider the general purpose or policy behind the statute, as well as the development of a statute to discern legislative intent that may not be as clear upon initial examination of the current language of the statute. *See Cooper,* 357 Md. at 629, 745 A.2d at 1077.

The Act defines a social worker in § 19–101(g) as one "who practices social work," which is further defined in Section 19–101(e) as follows:

(1) Helping individuals, groups, or communities to enhance or restore their capacity for social functioning;

(2) Seeking to create societal conditions favorable to this goal; and

(3) By the application of social work values, principles, and techniques:

(i) Helping people obtain tangible services;

(ii) Helping persons, communities, and groups provide or improve social and health services; and

(iii) Counseling with individuals, families, and groups.

By contrast, Section 19–101(f) defines the practice of *clinical* social work as follows:

(1) "Practice clinical social work" means to engage professionally and for compensation in the application of social work principles and methods for the alleviation of social, mental, and emotional conditions through treatment designed to provide psychotherapy for a mental disorder.

(2) "Practice clinical social work" includes rendering a diagnosis based on a recognized manual of mental and emotional disorders.

[4] From the plain language of the Act, it is clear that Petitioner's argument is misguided. Petitioner's description of Dr. Munson as a "social worker" ignores a significant distinction drawn by the Act. Dr. Munson is not a "social worker" as that term is defined in § 19–101(g); rather he is a licensed *clinical* social worker. The Act draws a critical distinction between the licensed social worker and the licensed *clinical* social worker. *See* § 19–101(f)(2). Unlike a licensed social worker, Dr. Munson, as a licensed *clinical* social worker, is specifically authorized by the Legislature to render diagnoses based on a recognized manual of mental and emotional disorders. It is plain from the statutory language that the Legislature deems licensed clinical social workers capable of rendering diagnoses such as those made by Dr. Munson based on DSM–IV.[5]

---

5. The parties do not dispute that DSM–IV is a recognized manual of mental and emotional disorders.

The advanced educational standards adopted for the clinical social work license further support our conclusion that the General Assembly intended to permit licensed clinical social workers to render diagnoses. *See* § 19–302.[6] These educational requirements are more stringent than those required for the non-clinical license, which does not include a similar grant to diagnose mental and emotional disorders. This disparity in education and training standards is consistent with a

---

**6.** Section 19–302 sets forth the qualifications of applicants for social work licenses. To qualify for a license, an applicant must be of good moral character and meet the following requirements:

(b) An applicant for a *social work associate license* shall have a baccalaureate degree:

(1) From an accredited college or university; and

(2) Based on a social work program accredited by the Council on Social Work Education.

(c) An applicant for a *graduate social worker license* shall have:

(1) A master's degree from an accredited college or university and based on a graduate social work program accredited by the Council on Social Work Education; or

(2) A doctorate degree in social work from an accredited college or university.

(d)(1) An applicant for a *certified social worker license* shall have:

(i) A master's degree from an accredited college or university and based on a graduate social work program accredited by the Council on Social Work Education; and

(ii) 2 years of social work experience as a social worker where face-to-face supervision is part of the employment contract and the supervisor is a licensed certified social worker and is provided by and accountable to the employer after receiving the master's degree.

(2) An applicant for a *certified social worker-clinical license* shall have:

(i) A master's degree in social work and documentation of clinical course work from an accredited college or university and based on a graduate social work program accredited by the Council on Social Work Education; and

(ii) 2 years of supervised clinical social work experience of at least 3,000 hours after receiving the master's degree with a minimum of 144 hours of periodic direct face-to-face supervision provided in not less than 2 consecutive years and not more than 6 consecutive years and where the supervision is part of the employment contract and the supervisor is a licensed certified social worker-clinical and is provided by and accountable to the employer.

(e) Except as otherwise provided in this title, the applicant shall pass an appropriate examination given by the Board under this subtitle. (emphasis added)

legislative grant that allows the clinical social worker to render diagnoses based on a manual of mental and emotional disorders. Significantly, § 19–307(b), which sets out restrictions on the scope of social work licenses, expressly denies the authority to diagnose mental or emotional disorders or to engage in psychotherapy to those practitioners holding a social work associate license. Section 19–307(b) states that "[a] licensed social work associate may not make a clinical diagnosis of mental and emotional disorders or engage in the practice of psychotherapy."

Petitioner's interpretation also ignores provisions of the Act that must be read in conjunction with the provisions that Petitioner chooses to rely upon. Thus, there is no merit to Petitioner's argument that Dr. Munson's testimony was inadmissible as a medical diagnosis that may be made only by a physician. To be sure, a diagnosis rendered on the basis of a recognized manual of mental and emotional disorders is within the statutory definition of the term "practice medicine." *See* § 14–101(k)(1)(i), (k)(2)(i). Nonetheless, § 14–102 provides, in pertinent part:

(a) *Individuals exempt—In general.*—This title does not limit the right of:

(1) An individual to practice a health occupation that the individual is authorized to practice under this article. . . .

When these sections are read together, it is clear that Title 14 of the Act does not preclude a licensed clinical social worker from rendering a diagnosis based on a recognized manual of mental and emotional disorders, as it is specifically authorized by § 19–101(f).

The legislative history of the Act further supports our conclusion. As first promulgated in 1957, the Act did not include a separate license for clinical social workers. *See* Maryland Code (1957, 1980 Repl.Vol.) Art. 43, § 860. In 1992, the General Assembly enacted House Bill 1087 (1992 Md. Laws, ch. 388) which amended the Act and created a separate license for clinical social workers. A Bill Analysis of House Bill 1087 indicates that, *inter alia,* the bill was intended to

create and specify requirements for a new clinical social worker license and authorize the licensees to "provide psychotherapy for a mental disorder and render a diagnosis based on [a recognized manual of mental and emotional disorders]." Senate Economic and Environmental Affairs Committee, Bill Analysis of House Bill 1087 (available at the Maryland Department of Legislative Reference Library, Bill File for H.B. 1087 (1992)). At the same time, Chapter 388 eliminated the provision requiring licensed social workers to refer persons to qualified medical practitioners under certain circumstances. Furthermore, the General Assembly removed the Insurance Code provision limiting reimbursement for social worker services for diagnosis and treatment to those circumstances where there was a physician referral. *See* 1992 Md. Laws, ch. 388, Maryland Code (1997, 1999 Supp.) Insurance Art., § 15–707(b).[7] Petitioner's reliance upon 73 Op. Att'y Gen. 208 (1988) expressing the view that a social worker may not render a diagnosis unless the patient has been seen first by a physician and then referred to the social worker provides no support for her argument now that the statute has been amended to eliminate the referral requirement. The opinion letter is simply out-dated. Removing the physician referral requirement for diagnosis by social workers and at the same time creating a new clinical social work license is strong evidence of the legislative intent. The legislative history thus reflects the General Assembly's understanding of the increas-

---

**7.** The Insurance Code provided "[c]very health insurance policy ... which provides for reimbursement for any service which is within the lawful scope of practice of a licensed certified social worker shall provide such benefit whether the service is performed by a doctor of medicine or by a licensed certified social worker ... if the insured or the person covered by the policy was referred to the social worker by a physician." Maryland Code (1957, 1991 Repl.Vol.) Art. 48A, § 470K. The current section, as amended by 1992 Md. Laws, ch. 388, provides for reimbursement to a social worker for services as follows:

"If a policy for certificate subject to this section provides for reimbursement for a service that is within the lawful scope of practice of a licensed certified social worker, the insured or any other person covered by the policy is entitled to reimbursement for the service *regardless of whether the service is performed by a physician or licensed certified social worker-clinical.*" (Emphasis added).

ing importance of the social worker's role and supports the view that the Legislature intended clinical social workers to diagnose mental and emotional disorders.[8]

In permitting licensed clinical social workers to render diagnoses of mental disorders, Maryland is in accord with most other states. At least thirty-three states and the District of Columbia have statutes defining social work or clinical social work as including diagnoses or evaluations of mental disorders.[9]

The Maryland Code does not address specifically the admissibility of expert testimony by clinical social workers, and there is nothing in the Act that bars a clinical social worker from expressing an opinion as to the existence of a mental disorder based on a recognized manual. Therefore, the general rule that qualifications of expert witnesses are to be deter-

---

**8.** The importance of the treatment provided by social workers was recognized by the United States Supreme Court in *Jaffee v. Redmond,* 518 U.S. 1, 116 S.Ct. 1923, 135 L.Ed.2d 337 (1996). The Court, in recognizing a privilege protecting confidential communications to social workers, stated:

Today, social workers provide a significant amount of mental health treatment. Their clients often include the poor and those of modest means who could not afford the assistance of a psychiatrist or psychologist, but whose counseling sessions serve the same public goals. We therefore agree with the Court of Appeals that "[d]rawing a distinction between the counseling provided by costly psychotherapists and the counseling provided by more readily accessible social workers serves no discernible public purpose."

*Id.* at 16–17, 116 S.Ct. at 1931–32, 135 L.Ed.2d 337 (1996) (internal citations omitted).

**9.** *See* Alaska Stat. § 08.95.990(2); Ariz.Rev.Stat. § 32–3251(7); Colo. Rev.Stat. § 12–43–403; Conn. Gen.Stat. § 20–195m; Del.Code Ann. tit. 24, § 3902; D.C.Code Ann. § 2–3301.2(18); Ga. Code Ann. § 43–10A–3 (13); Haw. Stat. Rev. § 467D–2; 224 Ill. Comp. Stat. 20/3; Kan. Stat. Ann. § 65–6319; La.Rev.Stat. Ann. § 37:2708; Mass. Gen. Laws ch. 112, § 130; Minn. Stat. § 148B.18(11); Miss.Code Ann. § 73–53–3; Mo. Rev. Stat. § 337.600; Nev. Rev. Stat. § 641B.030; N.H.Rev.Stat. Ann. § 330–A:2, N.M. Stat. Ann. § 61–31–6; N.C. Gen. Stat. § 90B–3; Ohio Rev. Code Ann. § 4757.01; Or. Rev. Stat. § 675.510; 63 Pa. Cons.Stat. § 1903; S.D. Codified Laws § 36–26–45; Tenn.Code Ann. § 63–23–103; Utah Code Ann. § 58–60–202; Va.Code Ann. § 54.1–3700; Wash. Rev. Code § 18.19.110; W. Va.Code § 30–30–2; Wis. Stat. § 457.01; Wyo. Stat. Ann. § 33–38–102.

mined within the sound discretion of the court is applicable. Maryland Rule 5–702, governing the admissibility of expert testimony, provides:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

It is within the sound discretion of the trial judge to determine the admissibility of expert testimony. *See Sippio v. State,* 350 Md. 633, 648, 714 A.2d 864, 872 (1998). Rule 5–702 vests trial judges with wide latitude in deciding whether to qualify a witness as an expert and does not limit the discretion of the trial court. *See Massie v. State,* 349 Md. 834, 850, 709 A.2d 1316, 1324 (1998). The trial court is free to consider any aspect of a witness's background in determining whether the witness is sufficiently familiar with the subject to render an expert opinion, including the witness's formal education, professional training, personal observations, and actual experience. *See id.* at 851, 709 A.2d at 1324. Absent a statute to the contrary, even the lack of particular formal credentials does not disqualify an expert witness, so long as the witness is sufficiently qualified that the witness's testimony would be helpful to the fact finder. *See Oken v. State,* 327 Md. 628, 659, 612 A.2d 258, 274 (1992); *State v. Bricker,* 321 Md. 86, 95, 581 A.2d 9, 14 (1990); *Consol. Mech. Contractors v. Ball,* 263 Md. 328, 338, 283 A.2d 154, 159 (1971); LYNN McLAIN, MARYLAND RULES OF EVIDENCE § 2.702.4, at 191 (1994). *See also, e.g., Jenkins v. United States,* 307 F.2d 637, 645 (D.C.Cir.1962) (en banc); *Tank v. Commissioner of Internal Revenue,* 270 F.2d 477, 486 (6th Cir.1959). The trial court's action in the area of admission of expert testimony seldom provides a basis for reversal. *See Radman v. Harold,* 279 Md. 167, 173, 367 A.2d

472, 476 (1977); *see also* JOSEPH F. MURPHY, JR., MARYLAND EVIDENCE HANDBOOK § 1403, at 540 (3d ed.1999).

■ As outlined previously, Dr. Munson has extensive education and experience in the field of clinical social work, from which the trial court could properly conclude that he is qualified to testify as an expert. The trial court, therefore, did not abuse its discretion in allowing Dr. Munson to testify as an expert witness and admitting his opinion testimony regarding the Respondent's mental disorders.

Several other courts have held that social workers or clinical social workers are not disqualified from testifying to a diagnosis of a mental disorder. In *In re Detention of A.S.*, 138 Wash.2d 898, 982 P.2d 1156 (1999), detainees appealed from fourteen-day involuntary civil commitment orders. They argued that the state's expert should not have been permitted to give his expert opinion as to their mental conditions because he was not a medical doctor or a psychologist. *See id.* at 1165. The Supreme Court of Washington rejected this argument, observing that the Washington statute, WASH. REV.CODE § 18.19.110, provides that "[c]ertified social work practice . . . includes, but is not limited to, evaluation, assessment, [and] treatment of psychopathology." *Id.* at 1169. In light of this provision, the court held that

> [i]n the absence of legislative direction limiting a social worker's scope of practice, or defining "mental disorder" . . . as a condition only a physician may diagnose, we decline to formulate a categorical evidentiary rule. Rather, we continue to allow trial courts to exercise their sound discretion as to a social worker's qualifications to opine about mental disorders.

*Id.* *See also State v. Bordelon*, 597 So.2d 147, 150 (La.App. 1992) (holding that trial court erred when it excluded testimony of a social worker offered by defendant to give expert opinion as to defendant's mental condition at the time of his confession; exclusion was based on trial judge's belief that board-certified psychiatric social worker was not qualified to make a diagnosis); *America West Airlines v. Tope*, 935

S.W.2d 908, 918 (Tex.Ct.App.1996) (rejecting argument that trial court erred in permitting licensed clinical social worker to give expert testimony of her diagnosis of plaintiff's mental condition because she did not have a medical degree or a Ph.D. in psychology).

Finally, Petitioner points to the provision in the Maryland Code that expressly authorizes psychologists licensed under the Maryland Psychologists Act to testify as experts on ultimate issues, see Maryland Code (1973, 1998 Repl.Vol., 1999 Supp.) Cts. & Jud. Proc. Art., § 9–120, and argues that the lack of a similar provision for social workers is evidence of the Legislature's intent to deny them that ability. This argument lacks merit. A legislative act specifically decreeing that a class of persons is qualified to give expert testimony on a given subject merely limits the court's discretion to deny a person in that class expert status for the purpose of testifying. See Bricker, 321 Md. at 95, 581 A.2d at 13 (noting that when a statute sets out the requirements for a person to be qualified as an expert, courts have limited discretion and must adhere to the statute). When no such statute exists with regard to a person offered as an expert, however, the court has broad discretion to determine whether that person will be qualified as an expert or not. Id. The absence of a statute in this case specifically qualifying clinical social workers as experts qualified to diagnose and testify to their opinions is, therefore, of no consequence.

For the reasons stated above, we hold that the trial court did not abuse its discretion in finding Dr. Munson qualified as an expert and admitting his opinion on the mental disorders. Dr. Munson met the statutory definition of a certified social worker-clinical license as set forth in § 19–302 and was appropriately qualified as an expert.

*JUDGMENT AFFIRMED. PETITIONER TO PAY COSTS.*