9 A.3d 502

**In re ADOPTION/Guardianship OF TATIANNA B.**

**No. 36, Sept. Term, 2010.**

Court of Appeals of Maryland.

Dec. 3, 2010.

Tamara D. Sanders, Asst. Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for appellant.

Ann M. Sheridan, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for appellee.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

BATTAGLIA, J.

The present case involves a termination of parental rights for unfitness, based upon the juvenile judge's determination that the mother, Hyacinth M., "pose[d] an unacceptable risk to ... [the] future safety" of her three-year-old daughter, Tatianna B. During the course of the proceedings, the judge permitted a licensed clinical social worker, Dianna McFarlane, who concededly, by both Ms. M.'s counsel and the State, was qualified to testify as an expert in social work, to opine regarding the risk of future harm to Tatianna B. were she to return to Ms. M.'s household, i.e., a "risk and safety assessment." The juvenile court, more specifically, determined that, because Ms. McFarlane was "broadly qualified in the area of social work," she could testify in the "areas of child abuse and neglect, children in foster care, permanency planning, adoption, and risk and safety assessment."

It is from this ruling, under an abuse of discretion standard, that we are asked to hold that an expert witness, qualified in the area of social work, should not have been permitted to testify in the area of risk assessment.[1] We shall hold, however, that the juvenile judge did not abuse her discretion by qualifying a licensed clinical social worker as an expert witness in social work and permitting her to opine regarding, *inter alia,* risk and safety assessment.

On December 8, 2009, the TPR hearing regarding the parental rights of Ms. M. commenced before Judge Cynthia Callahan in the Circuit Court for Montgomery County, sitting

---

1. Ms. M. appealed the juvenile court judge's ruling to the Court of Special Appeals. We granted certiorari on our own initiative, *In re Adoption of Tatianna B.,* 415 Md. 38, 997 A.2d 789 (2010), prior to any proceedings in the intermediate appellate court. Ms. M. presented the following question:

   Did the trial court err by determining that "risk assessment" was [sic] field of expert study and by concluding that the Department's witness was qualified to testify as an expert in this alleged field?

   This question, however, does not reflect the true nature of the juvenile judge's ruling. Although Ms. McFarlane was offered as an expert in "risk assessment," the judge qualified her in the area of social work and allowed Ms. McFarlane to testify regarding risk and safety assessment.

as a juvenile court, during which the Montgomery County Department of Health and Human Services asked the court to qualify Dianna McFarlane, a licensed clinical social worker, as an expert. Following voir dire of Ms. McFarlane, Ms. M.'s counsel objected:

Your Honor, at this point in time, I would object to the introduction or the qualifications. She's a social worker. Obviously, she can provide expert testimony generally in relation to social work matters, Your Honor, but I don't want to use the term "junk science," but what we've heard testimony to is general—she's had some general training in these fields, and yes, she does have training and experience in these fields, but these aren't fields that subject themselves to the expert testimony that I believe is going to be drawn out for opinions concerning my client and most likely Tatianna B. . . .

Your Honor, these are not, as the testimony and the cross-examination showed, these are not fields of law that are subjected to sort of like, I want to say a hard science, like, say, drug analysis, where reviews are made, protocols are set up. This is sort of some general training. She, I guess, is qualified or she at least qualifies to pass the test so she gets her CLE hours and then—but I do not believe, Your Honor, in light of what is being asked for her to be qualified as an expert, that that in any way subjects her to the ability to make opinion testimony as an expert.

Judge Callahan overruled Ms. M.'s counsel's objection:

Okay. [Ms. M.'s Counsel], I don't think there's any requirement in the law or elsewhere that somebody's qualifications have to be tested by some kind of process that can be repeated in a scientific way. In fact, I think social scientists are regularly qualified as expert witnesses, particularly in the family law area.

I think what you just suggested is that she be broadly qualified in the area of social work, which I think is considerably broader than what [the Department] asked. So, I'm going to qualify the witness as an expert in the areas of

child abuse and neglect, children in foster care, permanency planning, adoption, and risk and safety assessment.

Thereafter, Ms. McFarlane testified that she is licensed by the State of Maryland in the field of clinical social work, pursuant to Section 19–302(e) of the Health Occupations Article, the qualifications of which require education and training. She informed the judge that she possesses a master's degree in the field of social work and has six years' experience working for the Department. As to her familiarity with the case, she stated that it was assigned to her in her role as a foster care worker, after Tatianna B. was adjudicated as a child in need of assistance.[2] Ms. McFarlane, then, laid out the factors she considered in her assessment regarding the risk to Tatianna B., if she were to be placed back into the care of Ms. M. Prior to the time that Ms. McFarlane gave her opinion based upon her risk assessment, the following colloquy ensued:

[THE DEPARTMENT]: Now, you've been already designated as an expert in child abuse and neglect, children in foster care, permanency planning, adoption, and risk and safety of children. Based on your expertise in those fields and the factors that you've just outlined as far as issues you consider in assessing risk to [Tatianna B.], do you have an opinion to a reasonable degree of certainty whether there is a risk of harm to [Tatianna B.] were she at any time reunified with her mother, [Ms.] M.?

\* \* \*

[MS. M.'s COUNSEL]: Your Honor, I'm going to object. I think we're almost there, but a reasonable degree of what certainty?

\* \* \*

[JUDGE CALLAHAN]: I think that the reasonable degree of certainty is a *reasonable degree of certainty for a [li-*

---

2. On July 28, 2008, at the CINA hearing for Tatianna B., Ms. M. waived formal proof as to the facts alleged in the petition. The court sustained the facts and found Tatianna B. to be a child in need of assistance.

*censed clinical social worker]* with the training and expertise that she has.

Emphasis added.

Ms. M. contends that Judge Callahan erred "by accepting Ms. McFarlane as an expert witness capable of determining whether Ms. M. posed a risk to Tatianna [B.] . . . ." The State argues, conversely, that it is not an abuse of discretion to qualify a licensed clinical social worker as an expert in social work, with experience and training in risk assessment, permitting him or her to testify regarding the risk of future harm to a child in a household. The State contends, moreover, that "Ms. McFarlane was eminently qualified to testify as an expert witness in this case."

In determining whether Judge Callahan properly qualified Ms. McFarlane as an expert in social work and permitted her to opine regarding the risk of future harm to Tatianna B. were she to be returned to Ms. M.'s household, we look to Rule 5–702, which provides:

Expert testimony may be admitted, in the form of an opinion or otherwise, if the court determines that the testimony will assist the trier of fact to understand the evidence or to determine a fact in issue. In making that determination, the court shall determine (1) whether the witness is qualified as an expert by knowledge, skill, experience, training, or education, (2) the appropriateness of the expert testimony on the particular subject, and (3) whether a sufficient factual basis exists to support the expert testimony.

In *Blackwell v. Wyeth,* we noted that, under Rule 5–702, "the admissibility of expert testimony is within the sound discretion of the trial judge and will not be disturbed on appeal unless clearly erroneous." 408 Md. 575, 618, 971 A.2d 235, 261 (2009), quoting *Wilson v. State,* 370 Md. 191, 200, 803 A.2d 1034, 1039 (2002). *See also Rollins v. State,* 392 Md. 455, 500, 897 A.2d 821, 847 (2006) ("[W]hether a witness is qualified as an expert witness is generally within the discretion of the court, and will not be overturned unless his discretion has

been manifestly abused to the prejudice of the complaining party.") (citations omitted).

The issue before us in the present case is, solely, whether a licensed clinical social worker can qualify as an expert witness in social work and opine in a TPR hearing regarding the safety and risk of a child were she to be returned to her mother's care. In order to practice clinical social work, a person must be licensed as such. Maryland Code (1981, 2009 Repl.Vol.), Section 19–301(2) of the Health Occupations Article. Licensure requires that a clinical social worker:

(1) Meet the requirements of subsection (a) [3] of this section;

(2) Have received a master's degree in social work and documentation of clinical course work from a program accredited by the Council on Social Work Education or an equivalent organization approved by the Council on Social Work Education; and

(3) Provide in a form prescribed by the Board, documentation of having completed 2 years as a licensee with supervised experience of at least 3,000 hours after receiving the master's degree with a minimum of 144 hours of periodic face-to-face supervision in the assessment, formulation of a diagnostic impression, and treatment of mental disorders and other conditions and the provision of psychotherapy under the terms and conditions that the Board determines by regulation.

---

**3.** Section 19–302(a) provides, in pertinent part:

(a) *In general.*—To obtain a license, an applicant shall demonstrate to the satisfaction of the Board that the applicant:

(1) Has submitted a complete written application in the form prescribed by the Board;

(2) Is at least 18 years old;

(3) Is of good moral character;

(4) Except as otherwise provided in this title, has successfully passed an examination or examinations prescribed by the Board pertinent to the license sought; and

(5) Has paid all applicable fees specified by the Board relative to the licensure process.

.

Section 19–302(e). The practice of social work involves "apply[ing] the theories, knowledge, procedures, methods, or ethics derived from a formal educational program in social work to restore or enhance social functioning of individuals, couples, families, groups, organizations, or communities through," *inter alia*, "assessment," "formulating diagnostic impressions," "planning," and "intervention." Maryland Code (1981, 2009 Repl.Vol.), Section 19–101(m)(1) of the Health Occupations Article. A licensed clinical social worker, further, may supervise other social workers; evaluate, diagnose, and treat psychosocial conditions, mental and emotional conditions and impairments, and mental disorders; as well as provide psychotherapy. Section 19–101(m)(4).

In the present case, the record before Judge Callahan established that the judge did not abuse her discretion in qualifying Ms. McFarlane as an expert in social work, because of Ms. McFarlane's education, training and expertise as a licensed clinical social worker. Ms. M.'s Counsel at the TPR hearing, moreover, conceded that Ms. McFarlane was qualified to "provide expert testimony generally in relation to social work matters." Likewise, Ms. M.'s appellate counsel, in her brief before this Court and at oral argument, recognized that, based on her education, training and experience, Ms. McFarlane was an expert in the general field of social work.

The question then becomes, after having been qualified as an expert in social work, about what can Ms. McFarlane, a licensed clinical social worker, with experience with Tatianna B., opine? The Code of Maryland Regulations provides that, when investigating suspected child abuse and neglect, social workers [4] must:

---

**4.** In this subtitle, the Code of Maryland Regulations addresses its regulations as pertaining to "local departments." "Local department" is defined as "the department of social services, or the Montgomery County Department of Health and Human Services, that has jurisdiction in a county or Baltimore City to investigate or assist in the investigation of a report of suspected abuse or neglect." COMAR 07.02.07.02. In the present case, these regulations pertain to the Montgomery County Department of Health and Human Services, where

(1) Assess immediate safety and risk of maltreatment of children who are household or family members or in the care or custody of the alleged maltreator;

(2) Determine if child abuse or neglect is indicated, unsubstantiated, or ruled out;

(3) Determine if maltreatment, other than that initially reported, is indicated, unsubstantiated, or ruled out;

(4) Determine what services, if any, are appropriate; and

(5) Determine if the local department should initiate the process of voluntary placement as defined in Family Law Article, § 5–525(a), Annotated Code of Maryland, shelter care, or file a CINA petition.

COMAR 07.02.07.07. An investigation is not complete until a social worker, *inter alia*, "[a]ssesses the safety of all children in the care or custody of an alleged maltreator who may be at risk," "[e]valuates factors pertinent to the risk of future child abuse or neglect," and "[d]etermines what services, if any, are needed." COMAR 07.02.07.09(d)-(f). A record of the investigation must be kept, which shall include, "[i]f appropriate, an assessment of the safety and risk of maltreatment of all the children in the household, including: (a) Identification of safety issues and specific plans related to those issues; [and] (b) Documentation of any factors placing a child at risk." COMAR 07.02.07.15(2)(a)-(b).

In the context of the present matter, in which Ms. McFarlane acted as a foster care worker tasked with handling Tatianna B.'s case, the Code of Maryland Regulations provides that, once a child is adjudicated as a child in need of assistance and placed in foster care, any decision by the department regarding reunifying the child with his or her parents requires the following evaluation:

The decision by the local department to return a foster child to the care of the parents or legal guardian shall be made

---

Ms. McFarlane is employed as a clinical social worker. Social workers are those that are licensed to carry out the work of the local departments.

with the parent or legal guardian's participation after an assessment of their ability to safely care for the child and a thorough evaluation of the parent's or legal guardian's living situation and capacity to safely resume parental responsibilities.

COMAR 07.02.11.24. Likewise, a decision regarding a permanency plan other than reunifying the child with his or her parents also requires a thorough assessment of the risk in the future harm of placing the child back into the care of his or her parents, a process that requires the consideration of various factors, too numerous to list here. *See* COMAR 07.02.11.16.

With regard to Tatianna B., Ms. McFarlane testified that the case was assigned to her in her role as a foster care worker, which requires her to "always assess for risk" and "always ensur[e] that the child is safe," and to prepare for this, she had attended trainings and workshops regarding risk assessment. Ms. McFarlane further testified that, while handling Tatianna B.'s case, she monitored and maintained Tatianna B.'s placement in foster care, which included monitoring the child's health and emotional well-being concomitant with monthly visits. She also testified that she had monthly contact with Ms. M., in which she interviewed Ms. M. and provided referrals to enable Ms. M. to seek appropriate treatment. In addition to Tatianna B.'s case, Ms. McFarlane stated that she had maintained an additional caseload, for which she had presented opinions regarding risk assessment in court. Once qualified as an expert in social work, Ms. McFarlane could opine regarding the risk of future harm to Tatianna B. were she to be returned to Ms. M.'s care.[5]

---

**5.** Ms. M. rests much of her argument on the fact that the juvenile court's "failure to adopt the *Frye/Reed* test for evaluating the admissibility of [Ms. McFarlane's] expert testimony constituted reversible error." We extensively explored the *Frye–Reed* test in *Blackwell v. Wyeth*, 408 Md. 575, 577 n. 1, 971 A.2d 235, 236 n. 1 (2009), observing:

> *Frye–Reed* is the test in Maryland for determining whether expert testimony is admissible. The name is derived from two cases, *Frye v. United States*, 293 F. 1013 (D.C.Cir.1923), where this standard of

Consequently, any issues regarding the depth of Ms. McFarlane's experience with Tatianna B. would go to the weight of her testimony, not the admissibility of her testimony. *See Terumo Medical Corp. v. Greenway,* 171 Md.App. 617, 623–24, 911 A.2d 888, 891–92 (2006).

In so holding, we find succor in our jurisprudence, most recently in *In re Adoption/Guardianship No. CCJ14746,* 360 Md. 634, 759 A.2d 755 (2000), wherein we also considered the propriety of allowing a licensed clinical social worker to testify, in a TPR hearing, as an expert in clinical social work and to opine regarding the mother's chronic mental illness and its effect on the daughter's well-being. In determining that the judge had not abused his discretion in admitting the expert testimony, we observed that Section 19–101(f) of the Health Occupations Article defined the practice of clinical social work as, *inter alia,* "rendering a diagnosis based on a recognized manual of mental and emotional disorders," and concluded:

> Unlike a licensed social worker, . . . a licensed *clinical* social worker[ ] is specifically authorized by the Legislature to render diagnoses based on a recognized manual of mental and emotional disorders. It is plain from the statutory language that the Legislature deems licensed clinical social workers capable of rendering diagnoses such as those made by [the licensed clinical social worker at trial].

*Id.* at 642, 759 A.2d at 759–60. We further noted that, "[t]he Maryland Code does not address specifically the admissibility of expert testimony by clinical social workers, and there is nothing . . . that bars a clinical social worker from expressing an opinion as to the existence of a mental disorder based on a recognized manual," holding that the licensed clinical social

general acceptance in the relevant scientific community was first articulated, and *Reed v. State,* 283 Md. 374, 391 A.2d 364 (1978), where we adopted the *Frye* standard.

We shall not address Ms. M.'s argument, however, because it is not properly before us. Before the juvenile court, Ms. M. never asked the judge to conduct a *Frye–Reed* hearing, as her appellate counsel conceded during oral argument. *See* Rule 8–131 ("Ordinarily, the appellate court will not decide any other issue unless it plainly appears by the record to have been raised in or decided by the trial court. . . .").

worker "ha[d] extensive education and experience in the field of clinical social work, from which the trial court could properly conclude that he [was] qualified to testify as an expert." We concluded that the trial court "did not abuse its discretion in allowing [the licensed clinical social worker] to testify as an expert witness and admitting his opinion testimony regarding the [mother's] mental disorders." *Id.* at 646–49, 759 A.2d at 762–63.

In conclusion, the juvenile judge did not abuse her discretion in qualifying Ms. McFarlane and in admitting her testimony regarding the risk of future harm were Tatianna B. to be returned to Ms. M.'s household.

**JUDGMENT OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**